In re Francis A. ARNOLD, a/k/a
Frank Arnold, Debtor.

Francis A. ARNOLD, a/k/a Frank
Arnold, Plaintiff–Appellant,

v.

Ruth WEAST, Defendant–Appellee.

No. 88–2577.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1989.

Decided March 6, 1989.

Larry Ervin Becker (Lieding & Becker, P.C., McLean, Va., on brief), for plaintiff-appellant.

Stephen Scott Mitchell (McKinley, Schmidtlein & Mitchell, Alexandria, Va., on brief), for defendant-appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.

MURNAGHAN, Circuit Judge:

The appellant, Francis Arnold, filed for Chapter 13 bankruptcy in 1984. At the time of the confirmation hearing, Arnold reported his income as approximately $80,000 per year. In August 1985, the bankruptcy court confirmed a Chapter 13 payment plan whereby Arnold would pay $800 per month for 36 months, covering approximately 20% of the debt he owed to unsecured creditors.

On October 29, 1987, Ruth W. Weast, an unsecured creditor, moved pursuant to 11 U.S.C. § 1329 for a modification of the plan to increase the amounts Arnold would be forced to pay. By that time, Arnold's income had grown to nearly $200,000 per year. In light of Arnold's higher income, the bankruptcy court granted the motion and modified the plan to increase the monthly payment to $1,500 and to extend the payment period to 60 months.

Arnold appealed to the United States District Court for the Eastern District of Virginia, which affirmed the modification, and then to the Fourth Circuit.

Arnold is a paper products salesman whose income is dependent upon commissions. Although at the time of the confirmation Arnold predicted that his 1985 income would total approximately $80,000, it turned out to be $102,310. In 1986, Arnold's income increased to $146,577. By December of 1987, it had increased to $199,999 per year.

Arnold contends, however, that along with the increase in income have come increased expenses. He has apparently remarried, had a new son, bought a new home and is helping to pay the college expenses of one of his children.

## INCREASE IN PAYMENTS

■ The Bankruptcy Court did not err in increasing Arnold's payments from $800 to $1,500 per month. The Bankruptcy Code provides in pertinent part that:

[A]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee *or the holder of an allowed unsecured claim,* to

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan.

11 U.S.C. § 1329(a) (emphasis added). Although § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments. *See Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th

Cir.1987); *In re Fitak,* 92 B.R. 243, 248–50 (Bankr.S.D.Ohio 1988), *citing* Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong., 1st Sess. 181, 215–16, 221 (1981–82); *In re Gronski,* 86 B.R. 428, 432 (Bankr.E.D.Pa.1988); *In re Owens,* 82 B.R. 960, 966 (Bankr.N.D.Ill. 1988); *In re Moseley,* 74 B.R. 791, 799 (Bankr.C.D.Cal.1987); *In re Tschiderer,* 73 B.R. 133, 134 (Bankr.W.D.N.Y.1987). *See also,* 5 *Collier on Bankruptcy* ¶ 1329.01[b] at 1329–4 (15th ed. 1988).

Arnold has experienced a substantial increase in income since the Chapter 13 payment plan was originally confirmed. His annual income, which was projected to be $80,000 at the time of the confirmation, grew to nearly $200,000 by the time Weast sought the modification.

Arnold argues, however, that the increase in his monthly payments from $800 to $1,500 is unjustified for a number of reasons, including various public policy considerations. We address each argument:

1. *Increasing the Monthly Payments Does Not Contravene Congress' Intent to Give Debtors a "Fresh Start" Through Bankruptcy*

■ Arnold correctly points out that a major goal of bankruptcy is to provide debtors a "fresh start" in life by furnishing a way to obtain relief from their debts. However, the bankruptcy's "fresh start" goal is not thwarted by increasing monthly payments in response to a substantial increase in income such as Arnold has experienced.

As Weast points out, debtors receive their "fresh start" after the discharge in bankruptcy, which does not occur until all payments under the confirmed Chapter 13 plan have been made. *See* 11 U.S.C. § 1328(a). Congress provided that Chapter 13 bankruptcy payment plans could last no longer than five years. *See* 11 U.S.C. §§ 1322(c), 1329(c). The debtor knows that after five years he is "in the clear" and has a chance for a "fresh start" in his financial life. Congress also intended, however, that

the debtor repay his creditors to the extent of his capability during the Chapter 13 period. *See Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982). Certainly Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors. That is especially true here, where under the original Chapter 13 plan, the unsecured creditors were to receive only 20 cents on the dollar for their claims against Arnold while his income has escalated nearly 150%.

2. *The Public Policy of Encouraging Productive Work Habits Does Not Preclude an Upward Readjustment in the Level of Arnold's Monthly Payments*

■ Arnold argues that increases in income resulting from a debtor's own hard work should not be grounds for increasing the payments under a Chapter 13 plan. Arnold reasons that an increase in payments under such circumstances penalizes debtors for achieving success through hard work and will discourage such industriousness among bankrupts. That danger is especially acute here, Arnold argues, where the debtor's income depends on sales commissions which are determined by the amount of time and energy expended by the salesman. Arnold would limit increases in Chapter 13 payments to those cases in which a person's income has jumped dramatically through no real effort of his own. *E.g., In re Euerle,* 70 B.R. 72 (Bankr.D.N. H.1987) (payments readjusted upward after debtor was left an interest worth $300,000 in an estate); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (Chapter 13 payments increased after debtor won $1,300,000 in a lottery).

Adjusting a debtor's Chapter 13 payments upward will discourage hard work far less than Arnold would have us believe. Many debtors would work hard to improve their condition even if they knew every dollar in higher pay would go to their creditors, rather than to their personal benefit, during the Chapter 13 period. The promotions or increased stature in a job or

profession that result from the debtor's hard work, even if they produce no net financial gain for the debtor during the Chapter 13 period, will produce monetary benefits for the debtor after the bankruptcy period ends.

Furthermore, some debtors, although perhaps a small, but nonetheless appreciable, minority, will welcome the opportunity to pay as much as they can afford to their creditors. Those people may feel a moral obligation to work hard to earn more money so they can repay as much of their debts as possible.

Arnold's arguments that the increased payments will discourage him from working hard ring hollow in light of the fact that, although his *monthly* gross income in December 1987 was nearly $10,000 higher than at the time of the Chapter 13 confirmation, the bankruptcy court increased his monthly payments only by $700 per month. Even with the higher Chapter 13 payments, Arnold's hard work has paid off handsomely for him.

Even if the prospect of higher Chapter 13 payments were to discourage some debtors from working to improve their income, the creditors' interests would justify increasing the level of a debtor's payments when his or her financial condition improved markedly. It is grossly unfair for a debtor, who experiences an increase in yearly income of $120,000, to refuse to share some of that with creditors who are getting no more than 20 cents on the dollar for their claims under the original Chapter 13 plan. Bankruptcy invariably involves the balancing of the interests of both the debtors and the creditors. When a debtor's financial fortunes improve, the creditors should share some of the wealth.

3. *Res Judicata Does Not Bar Modification of Arnold's Monthly Payments*

    ■ The doctrine of *res judicata* bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation. *Fitak*, 92 B.R. at 249–50; 5 *Collier on Bankruptcy* ¶ 1329.01[b] at 1329–4 (15th ed. 1988). *See*

*also Moseley,* 74 B.R. at 799. Here, there has been a substantial change (from $80,000 to $200,000 per year) that must be considered unanticipated. If it was anticipated, Arnold's expectations should have been disclosed to the bankruptcy court before the original 36 month, $800 per month plan was confirmed.

We adopt the objective test applied in *Fitak* to determine whether a change was unanticipated: "whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." 92 B.R. at 250 (emphasis in original). Although it was reasonable to expect Arnold's income to fluctuate from year to year because it relied so heavily on sales commissions, Weast should not be expected to have anticipated a $120,000 jump in his income in only two years. *Res judicata* thus presents no bar to an upward adjustment of Arnold's monthly payment to take into account the unanticipated and substantial improvement in his financial condition.

4. *Sufficient Evidence Existed to Support the Bankruptcy Court's Conclusion That Arnold Had the Ability To Pay the Extra $700 Per Month*

The bankruptcy court did not abuse its discretion in increasing Arnold's payments by $700 per month. The evidence showed that his gross monthly income was almost $10,000 higher than it was at the time of confirmation.

Arnold argues, however, that his expenses had increased even faster than his income during that period. He submitted a revised financial statement at the time of the modification hearings showing that his after-tax monthly income in late 1987 was $10,068, while his total monthly expenses were $14,014. Arnold's wife, who works as a certified public accountant, purportedly contributed income that made up the monthly deficit.

Despite the purported monthly deficit, the bankruptcy court did not act unreasonably in increasing Arnold's monthly payments by $700. First, the bankruptcy court held that Arnold's wife had the capa-

bility of earning more than enough money per month to make up for the deficit in Arnold's finances. Second, the court found that many of Arnold's purported monthly expenses were unreasonably high. For example, Arnold's financial statement listed monthly expenses of $450 for clothing, $125 for gifts, and $450 for "extraordinary expenses." Most disturbing to the bankruptcy court was the $1,950 per month in improvements and upkeep on Arnold's house. Of the $1,950, $1,700 went for monthly payments on a $30,000 addition Arnold put on the house during the Chapter 13 period.

Arnold's situation is not one in which the debtor had no control over the increase in his expenses. Arnold chose to incur a relatively large expense so that he could increase the size of his home. There is no indication that Arnold could not have postponed such an expansion until his discharge in bankruptcy. Although a debtor who files for bankruptcy need not live in poverty during the payment period he should have some obligation to limit his expenses. The bankruptcy court did not abuse its discretion in forcing Arnold to share part of his new-found financial gains with his creditors.

## EXTENSION OF PLAN BEYOND 36 MONTHS

■ The Bankruptcy Code allows a court, "for cause," to extend the Chapter 13 payment period beyond 36 months, as long as the extension does not make the total period exceed 60 months. 11 U.S.C. § 1329(c).[1] The statute does not define "cause." The courts, it seems, must determine "cause" on a case-by-case basis.

Here there was cause to extend the payment period beyond 36 months. The bankruptcy court did not discover the substan-

tial increase in Arnold's salary until most of the original 36–month period had expired. By the time the increase in monthly payments to $1,500 became effective, only four months remained in the original 36–month period. In order to adhere to the 36–month period and still require Arnold to pay an amount commensurate with his improved financial standing, the bankruptcy court would have found it necessary to raise Arnold's monthly payments far above $1,500. The bankruptcy court may well have concluded that it was best to spread out over several months, rather than just four, the increased amount of money Arnold would be required to pay under the Chapter 13 plan to account for his improved financial fortunes.

It might be argued, however, that the bankruptcy court abused its discretion in extending the payment period by 24 months, to a total of five years. An extension of the period by 24 months would require Arnold to pay over $13,000 more than he would have been required to pay under the original 36–month plan if his payments had been $1,500 per month from the beginning of the Chapter 13 period.[2]

Here we need not pause to consider whether the bankruptcy judge adequately exercised, albeit in a glancing way, his discretion to increase the duration of the payout period to the maximum of 60 months allowed by statute. Assuming, without deciding, that sufficient exercise of discretion did not appear from the record, nevertheless neither Arnold nor his counsel raised any objection in the bankruptcy court to the point now sought to be raised, and that is fatal on appeal. Arnold's excuse is that the extension of the payment period occurred at the close of proceedings, allowing insufficient time for objection. However, Arnold could have moved for reconsidera-

---

1. The full text of 11 U.S.C. § 1329(c) follows:

   A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

2.

| | | |
|---|---|---|
| 1. | To be paid under modified plan: | |
| | 32 mos. × $800 = | $25,600 |
| | 28 mos. × $1,500 = | 42,000 |
| | | $67,600 |
| 2. | Payments of $1,500 per month for 36 months: 36 × 1,500 = | $54,000 |
| 3. | Difference: | $13,600 |

tion of the bankruptcy judge's decision after the extension came into being, but failed to do so.

The judgment is

AFFIRMED.