**In re Joseph SCHAITZ, Sandra Ann Schaitz, Debtors.**

**Bankruptcy No. 89–03438.**

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 23, 1989.

Jerome A. Tepper, Jeffrey E. Schelble, Milwaukee, Wis., for debtors.

Thomas J. King, Oshkosh, Wis., trustee.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

The matter before the court concerns an objection, filed by Gwen L. and Colton Webb, to confirmation of the chapter 13 plan proposed by the debtors, Joseph and Sandra Ann Schaitz. The objection to confirmation states that the Webbs' claim is based upon a judgment declaring it to be a nondischargeable debt under § 523(a)(2)(A) of the Bankruptcy Code, and that they believe the debtors' plan has not been proposed in good faith. § 1325(a)(3). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Following a hearing on the objection to confirmation on September 25, 1989, the court ruled that it would confirm the debtors' plan. A copy of the court's minutes of that hearing is attached to and incorporated by reference into this decision. The attorney for the objecting creditors thereafter advised the court that he had not received the written notice of the September 25, 1989 hearing and moved for reconsideration. A hearing on the merits was rescheduled for October 6, 1989, at which time the attorney for the objecting creditors appeared. The chapter 13 standing trustee and the attorney for the debtors appeared at both the September 25, 1989 and the October 6, 1989 hearings.

The debtors' proposed plan provides for payments of $25 a week for a period of five years and will pay creditors a minimum of 33% on their claims. Apart from their home mortgage which is to be paid outside the plan, the debtors list two creditors in their schedules—the Webbs in the amount of $12,328 and the debtors' attorney, Jeffrey E. Schelble, in the amount of $2,440. Both Mr. and Mrs. Schaitz are employed, and the plan is to be funded by payroll deductions. They have two daughters who are 11 and 14 years old.

The debtors' assets, as listed in their schedules, are a home valued at $79,000 on which there is a mortgage of $57,000, a 1984 Chevrolet valued at $2,000 and a 1980 Buick valued at $500, and checking and savings accounts with a total balance of

approximately $185. Finally, they have their clothing and household furniture which they value at $2,500 ["with no item exceeding $200 in value"], a $500 diamond wedding ring and a library of unknown value.

The debtors' monthly family budget shows combined take home pay of $1,992, living expenses of $1,860, plan payments of $100, and a remainder or "cushion" of $32. Although the budget shows plan payments as $100 a month, the $25 weekly payments over a period of time will in fact amount to approximately $108 a month, leaving an average remainder of $24. Budgeted expenses are listed as follows:

| | |
|---|---:|
| Home loan payment | 716.00 |
| Utilities and Maintenance | 225.00 |
| Food | · 400.00 |
| Clothing | 100.00 |
| Newspapers and Books | 12.00 |
| Transportation | 160.00 |
| Recreation and Entertainment | 100.00 |
| Insurance | 82.00 |
| Church and School Expense | 65.00 |
| | $1,860.00 |

■ As the standing chapter 13 trustees in this district are expected to and routinely do, the trustee in this case actively inquired into the items budgeted as living expenses. The question of good faith is highly subjective, and the amount of payments being made to creditors in chapter 13 cases is an important element to be considered when the court is asked to approve a proposed plan. The concern of the court is that the debtors and all others involved, case by case, receive equal treatment in every respect. The debtor has the burden of proof on the issue of good faith, and the court has a duty sua sponte to inquire into good faith, even if no objection to confirmation has been filed. *In re Girdaukas*, 92 B.R. 373 (Bankr. ED WI 1988); *In re Terrill*, 68 B.R. 441 (Bankr. CD IL 1987).

In this case, the trustee questioned the amounts listed for Recreation and Entertainment and Church and School Expense, but after some discussion backed off on the Church and School Expense item. The trustee thought in view of the nondischargeability aspect of the Webbs' claim that any amount for an item such as Recreation and Entertainment should be cut to a minimum. The court did not agree, and since the trustee had no other questions or concerns regarding the good faith of the debtors' proposed plan, the trustee recommended confirmation.

On or about July 23, 1986, the debtors had sold the home they were then living in to the Webbs, and shortly thereafter bought the house they now occupy. When the Webbs found that the basement in the home they had purchased from the debtors was subject to flooding, they contacted an attorney. The debtors subsequently filed bankruptcy, and a nondischargeability proceeding followed, which in turn resulted in a judgment in favor of the Webbs in the amount of $12,328.

No issue was raised by the attorney for the objecting creditors at the October 6, 1989 hearing with respect to the debtors' budgeted living expenses or the plan in and of itself. His objection went to the result that would necessarily obtain by the debtors' use of chapter 13 and confirmation of their plan. The sale proceeds from their first home had been used by the debtors as a down payment on their present home, and the practical effect of confirmation would allow them to keep their investment in their home while paying only a portion of the Webbs' claim. That is a result, however, that often obtains when a chapter 13 case is filed. There is no suggestion that the debtors purchased their new home in order to shield those funds from the objecting creditors. As the court sees it, another way to express that argument is that chapter 13 should not be available to these debtors without their giving up their home. In recent years, that of course is the very reason most chapter 13 cases have been filed—to save the debtors' home, and many such cases are confirmed with a very low payment or even a "0" payment to unsecured creditors.

■ The debtors' prefiling conduct is relevant to the issue of good faith, and thus, the fact that the objecting creditors' claim is nondischargeable by reason of fraud is an important factor to be considered, but it is not sufficient in and of itself as a matter

of law to show the debtors are acting in bad faith by invoking chapter 13. *In re Chaffin,* 836 F.2d 215 (5th Cir.1988).

■ The term, "good faith," is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible. In determining whether a plan is proposed in good faith, the court must examine the "totality of circumstances." *In re Smith,* 848 F.2d 813 (7th Cir.1988). Good faith contemplates a broad judicial inquiry into the debtor's conduct and state of mind in proposing a plan. The court should determine whether under the facts and circumstances of the case, there is an abuse of the provisions, purpose, or spirit of chapter 13. *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Estus,* 695 F.2d 311 (8th Cir.1982).

■ Based upon the debtors' present income and living expenses, the payments to be made under the proposed plan do not seem unreasonable. Apart from the one item which he questioned, referred to earlier, the trustee did not see the debtors' living expenses as being overstated or out of line. The plan proposes to make payments for the extended period of five years. § 1322(c). Because of the direct relationship between take home pay and tax refunds, it is the practice in this court to include in chapter 13 confirmation orders a provision that, in addition to the regular periodic payments to be made, all tax refunds received over the life of the plan are also to be paid into the plan. This supplement to the confirmation order will likely enhance the payments that are made to the creditors in this case during the life of the plan.

■ It should further be noted, as set out in the court's minutes, that the plan is subject to modification in the future, on motion of the trustee or a creditor, in the event the debtors' financial circumstances should show unforeseen improvement. To that end, debtors are required to furnish the trustee with copies of their income tax returns during the life of the plan, and they have agreed to supply copies to the attorney for the objecting creditors as well.

The court is satisfied from the facts in this case that the plan proposed by the debtors represents an honest attempt to pay their debt within the spirit and purpose of chapter 13. The court accordingly finds that the debtors' plan has been proposed in good faith.

This decision constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### APPENDIX

United States Bankruptcy Court, Eastern District of Wisconsin

CH. 13

Re: Joseph & Sandra Ann Schaitz

No. 89–03438

Date 09/25/89

D.E. Ihlenfeldt, Presiding

Nature of Hearing: Objection to confirmation by Gwen & Colton Webb

Appearances: Thomas J. King—trustee, Jeffrey E. Schelble—for debtors

Debtors incurred substantial nondischargeability judgment in case before Judge McGarity. They have filed this ch. 13 case with respect to that judgment and their attorney fees. The judgment creditors, Gwen L. Webb and Colton Webb, have objected to confirmation.

The objection points up the issue of good faith. *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Smith,* 848 F.2d 813 (7th Cir.1988). Court must consider the totality of circumstances in determining question of good faith, including debtors' prefiling conduct. On the other hand, fact that the debt involved is nondischargeable does not per se preclude confirmation. *In re Chaffin,* 836 F.2d 215 (5th Cir.1988).

Court and trustee examined into debtors' budget in some detail. Court feels budget is fair. Plan is 5 year plan (two years over the usual 3 year plan), will pay creditors 33%, at $100 a month. Plan is subject to modification later, on motion of trustee or creditors, in event debtors' financial cir-

cumstances should show unforeseen improvement.

Plan will be confirmed. Court will sign order of confirmation.