**In re Rubin McCRAY, Debtor.**

**Bankruptcy No. 93–41975.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Sept. 15, 1994.

R. Wade Gastin, Savannah, GA, for debtor.

Sylvia Ford Brown, Chapter 13 Trustee, Savannah, GA.

## *MEMORANDUM OPINION*

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter is before the Court on Motion to Retain Tax Refund filed by Sylvia Ford Brown ("Trustee"). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(E). Based on the evidence presented to the Court,

Trustee's motion will be denied. The Court publishes these findings of fact and conclusions of law in compliance with Fed. R.Bankr.P. 7052.

## FINDINGS OF FACT

Trustee proposes to retain a tax refund in the amount of One Thousand Six Hundred Ninety-eight Dollars ($1,698.00) received in behalf of Rubin McCray ("Debtor") from the State of Georgia. The funds were intercepted by the Georgia Department of Human Resources and turned over to Trustee. Trustee contends that the funds represent disposable income and should be disbursed to creditors in accordance with the provisions of Debtor's plan which was confirmed on April 28, 1994. The dividend established by Debtor's confirmed plan was 35.8 percent. The dividend percentage would increase substantially if the tax refund proceeds were applied to the payment of claims.

Debtor is employed in the shipping business at a gross monthly income of One Thousand Three Hundred Ninety-seven Dollars and Seven Cents ($1,397.07). Debtor's Schedule I indicates that Debtor's take home pay amounts to Nine Hundred Eighty-three Dollars and Fifty-five Cents ($983.55) per month after deductions for taxes, insurance and union dues. Debtor's budget set out in Schedule J shows that Debtor's monthly living expenses amount to Eight Hundred Ninety-seven Dollars ($897.00). A One Hundred Eighty-one Dollar ($181.00) portion of that sum is allocated to "alimony, maintenance, and support paying to others...." This means that Debtor has the use of Seven Hundred Sixteen Dollars ($716.00) per month to support himself.

## CONCLUSIONS OF LAW

■ Debtor contends that the tax refund is not property of the estate despite the provisions of 11 U.S.C. § 1306(a) which provide that property of the estate includes "all property ... that the debtor acquires after commencement of the case." Debtor contends instead that 11 U.S.C. § 1327(b) controls in that it provides that the confirmation of the plan "vests all of the property of the estate in the debtor." Since this case has been confirmed and the funds in question were received by Debtor following confirmation, it is correct to declare that the right to these funds has vested in Debtor. Such a vesting in Debtor precludes any determination that the funds would be properly considered as "property of the estate." [1] This, however, does not terminate the inquiry.

In its April 28, 1994 order confirming the Chapter 13 plan, the Court provided as follows:

> It has been determined after hearing on notice that the plan ... provides for distribution of property to an allowed unsecured claim in the amount of the claim *or* commits all disposable income for the next three years to the plan payments. (emphasis supplied).

Since this plan does not pay all claims in full, the provision for disposable income applies. Even though the tax refund may not be property of the estate, Debtor may be required pursuant to the terms of the order confirming the plan to fund the plan with the tax refund if it is determined that the money is disposable income. [2]

■ It can be readily concluded from the fact that Debtor has not had the use of these funds that the funds were not absolutely

---

1. *See American General Finance, Inc. v. McKnight (In re McKnight)*, 136 B.R. 891, 894 (Bankr.S.D.Ga.1992) (the bankruptcy estate continues post-confirmation and "consists of the post petition earnings of the debtor devoted to plan payments.... [P]ost petition earnings of the debtor not devoted to plan payments [vest] in the debtor at confirmation pursuant [to] the order of confirmation and § 1327(b) ..."). In *McKnight*, the court concluded that stay relief was not necessary for a creditor to garnish a chapter 13 debtor's wages post-confirmation since property of the estate was limited to those

monies devoted to plan payments. All other property vested in the debtor at confirmation pursuant to 11 U.S.C. § 1327(b).

2. Disposable income is defined in pertinent part as follows:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
> (A) for the maintenance or support of the debtor or a dependent of the debtor....

11 U.S.C. § 1325(b)(2) (Law.Co-op.1994).

essential to the funding of Debtor's monthly living expenses. It could be further concluded that Debtor understated his income by permitting withholdings for taxes in an amount that was greater than what was actually required to pay the taxes. Trustee argued that Schedule I and Schedule J would have revealed additional disposable income if Debtor's tax withholdings had been established in a lower amount so as to increase Debtor's take home pay. In another case these arguments might be persuasive. In this case, they ignore the economic realities of Debtor's life at the subsistence level.

■ The official bankruptcy forms require statements of income and expenses in Schedule I and Schedule J. The requirement for the disclosure of this information is appropriate and useful. Debtor's earning ability considered together with Debtor's lifestyle as detailed in the budget of expenditures serves as a reasonably reliable measure of Debtor's ability to fund the plan. At the same time, the process has some inherent limitations.

■ If a debtor's budget shows that living expenses exceed income, the Court is bound to conclude that Debtor cannot fund a plan of reorganization. On the other hand, whatever measure of excess is shown between income and expenditures would be conveniently characterized as disposable income which Debtor would be expected to apply to the funding of the reorganization case.

Most debtors have a history of spending as much or more than their income for items which are believed by Debtors to be essential living expenses. This is often the cause of the financial distress and subsequent resort to this Court for protection. Yet the level of essential living expenses varies drastically from one debtor to the next. It belabors the obvious to observe that the debtor's projected monthly expenses must correspond to the debtor's monthly income.

■ Debtor has demonstrated to the Court as a part of the confirmation process that he can subsist on Seven Hundred Sixteen Dollars ($716.00) per month. This Court has concluded in other cases that it would be reasonable to expect a single debtor to subsist on greater amounts. The amount

that is to be demonstrated as a reasonable budget for an individual remains to be determined on a case by case basis. The Court's obligation to perform a disposable income analysis cannot consist simply of concluding that the funds in question are disposable income because Debtor has been able to subsist without the benefit of those funds for more than a year. Likewise, it is inappropriate to conclude that Debtor would not now restate one or more line items in his budget if the funds were to become available to him as a matter of regular monthly income.

■ The process of analyzing budgets must take place within a larger context. In the disposable income analysis it is reasonable to inquire into the totality of the circumstances as an additional gauge to determine the sufficiency of Debtor's financial commitment to the reorganization of the plan. These proportions cannot be defined with mathematical certainty. They are, instead, additional areas of legitimate inquiry as a part of a comprehensive determination as to whether funds which become available to a debtor can be properly classified as disposable income.

■ There is a minimum level of expense which this Court must recognize as reasonable and necessary for an individual debtor who is responsible for his own housing, utilities, food, clothing, laundry, medical care, transportation and insurance. At this minimal level, it is a matter of marginal consequence how the debtor allocates the funds among the different categories. It is a zero-sum exercise. Any category with an allocation of an amount which might be greater than normal would only deplete another equally deserving category. In such a case it is clear that the debtor is simply adjusting his living circumstances to a point that is low enough to subsist on the funds which remain from his or her earnings after funding the minimum payment necessary to achieve confirmation of the Chapter 13 plan. At this income level, close analysis of the Schedule I and Schedule J information yields very little useful information.

■ Having determined that such a minimum income level exists, it remains for the

level to be determined on a case by case basis. In this case it is clear that Debtor subsists below that level. It is equally clear that Debtor would continue to subsist below that level if the tax refund were allocated to Debtor's income on a monthly basis.

Of some relevance in this case is the fact that Debtor's plan proposes a distribution to unsecured creditors in a percentage amount which is greater than what this Court requires as a minimum for confirmation. Further, the gross amount of Debtor's plan payment amounts to slightly less than ten percent (10%) of Debtor's net income.

The plan, at confirmation, committed all forseeable disposable income of Debtor for the next three years in compliance with 11 U.S.C. § 1325(b)(1)(B). Although section 1325(b)(1)(B) is by necessity a projected estimate, unforseen variations in income do not automatically justify modification of payments under the plan. "The confirmation order is res judicata on the disposable income test, except in extraordinary circumstances." *In re Woodhouse,* 119 B.R. 819, 820 (Bankr.M.D.Ala.1990), citing, *In re Arnold,* 869 F.2d 240 (4th Cir.1989); *In re Fitak,* 92 B.R. 243 (Bankr.S.D.Ohio 1988). "[U]nless there are substantial, unanticipated changes in the debtor's ability to pay under a plan already confirmed, the rights of the debtor and his creditors are settled at the date of confirmation, and ought not to be disturbed in modification proceedings relating to disposable income." *Woodhouse* at 820. The plan in the case before the Court has been confirmed. Issues of disposable income are therefore precluded from being raised unless the court should find the circumstances "extraordinary". Modification of payments is not justified under the facts of this case.

In summary, it is reasonable to consider that some debtors survive in financial circumstances which desperately justify the expenditure of additional funds for basic living expenses, even if a debtor's budget indicates otherwise. Further, the determination as to whether a debtor is making his best effort in the funding of a reorganization case can be determined by considering all of a debtor's circumstances including the percentage of income dedicated to repayment and the percentage of distribution to be received by holders of unsecured claims. Additionally, the receipt by Debtor of the tax refund in question is neither an "extraordinary" nor "substantial" change in Debtor's circumstances which would justify disturbing the plan of reorganization.

In the matter before the Court, in view of these factors, it must be determined that the tax refund in question is not disposable income, and that Debtor is entitled to retain the tax refund.

An order will be entered in accordance with this memorandum opinion.