**In re Michael P. O'BRIEN and Barbara A. O'Brien, Debtors.**

**Bankruptcy No. 93–09903–PHX–SSC.**

United States Bankruptcy Court,
D. Arizona.

April 11, 1995.

borrower to secure future loans under the security.'" *Pearll*, 146 Ariz. at 206–07, 704 P.2d at

1351–52 (citation omitted).

Virginia Matte, Davis & Lowe, P.C., Phoenix, AZ, for Trustee.

Ralph McDonald, Phoenix, AZ, Chapter 13 Trustee.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Bankruptcy Judge.

### Procedural History

MICHAEL P. O'BRIEN and BARBARA A. O'BRIEN, the Debtors herein, filed their Chapter 13 petition and Chapter 13 plan on September 24, 1993. A hearing on the confirmation of the Chapter 13 Plan was held on April 15, 1994. At that hearing, Ralph McDonald, the Chapter 13 Trustee, and the Debtors agreed that essentially a legal issue had arisen as to the treatment of postconfirmation tax refunds, which issue could be disposed of by way of oral argument. The Trustee also had concerns as to what would be the effect on the Debtors' confirmed plan, if the Debtors received other assets postconfirmation. The parties further agreed to a briefing schedule.

On May 5, 1994, the parties simultaneously filed their opening briefs. On May 16, 1994, the Trustee filed his response to the Debtors' opening brief. On May 19, 1994, the Debtors filed their responsive brief. On June 1, 1994, this Court held oral argument. The Court then took the matter under advisement.

This constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052, *Rules of Bankruptcy Procedure* (hereinafter "RBP"). This is a "core" proceeding and this Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157.

### Issue

The dispute in this proceeding is narrow, but with broad implications. If a plan is confirmed by a bankruptcy court and the debtor subsequently receives certain postconfirmation tax refunds, should the refunds be treated as "advance payments" under the Chapter 13 plan, essentially reducing the time period that the debtor must make payments under the plan, or should the refunds

Russell A. Brown, Brown & Sunkin, P.C., Chandler, AZ, for debtors.

be regarded as "supplements" or additional payments to be made under the plan that will not alter the duration of the debtor's plan and will increase the distribution to be made to creditors.

## Analysis

At oral argument, each side forcefully presented his or her position. Each side respected the position of the other, with each side proceeding in the utmost good faith. They fundamentally disagreed as to how the Court should proceed. Ultimately this Court's decision will have an impact on many Chapter 13 proceedings.

a. *The Postconfirmation Tax Refunds Constitute Property Of The Estate And The Court Need Not Address Whether The Refunds Also Constitute Disposable Income.*

In resolving this dispute, the Court must first consider how to classify tax refunds which are subsequently received by a debtor after confirmation.

 The Trustee argued that postconfirmation tax refunds represented assets of the bankruptcy estate. *In re Orndoff,* 100 B.R. 516 (Bankr.E.D.Cal.1989); *In re Koch,* 14 B.R. 64 (Bankr.D.Kan.1981). In a Chapter 13 proceeding, the concept of what constitutes property of the estate is more all inclusive than under other chapters of the Bankruptcy Code. 11 U.S.C. § 1306 provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed,

dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming plan, the debtor shall remain in possession of all property of the estate.

However, at the time of confirmation 11 U.S.C. § 1327(b) "vests" all of the property of the estate in the debtor.[1] *Black's Law Dictionary* states that the term "vests" means "To give an immediate, fixed right of present or future enjoyment.[2]" Since Section 1306(b) already provides the debtor with possession of bankruptcy estate property, the term "vests" in this context must mean that the bankruptcy estate generally ceases to exist, and the debtor has the sole ownership, control, and enjoyment of the property.

 The Trustee argues that Section 1306 is inconsistent with Section 1327(b); therefore, postconfirmation tax refunds should be deemed property of the estate subject to distribution to creditors. In essence, the specific provision defining property of the estate should control over the more general provisions concerning confirmation. The Debtors have referred this Court to the recent decision of *In re McCray,* 172 B.R. 154 (Bankr.S.D.Ga.1994). The *McCray* court determined that postconfirmation tax refunds were not property of the estate. *Id.* at 156. From this Court's standpoint, such a determination is generally true. However, a plan of reorganization or an order of confirmation may provide otherwise. In other words, a plan or an order of confirmation may require that certain wages received after the confirmation of a plan must be devoted to the plan's execution. In such a case, Section 1327(b) does not operate to vest the postconfirmation wages in the debtor, and the wages become property of the estate under Section 1306. *cf. In re Brilz,* 96 B.R. 308, 309 (Bankr.D.Mont.1989) (stating, in *dicta,* the once a chapter 13 plan is confirmed, the estate property revests in the debtor except for the postconfirmation earnings, which re-

---

1. 11 U.S.C. § 1327(b) states:

 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirma-

tion of a plan vests all of the property of the estate in the debtor.

2. *Black's Law Dictionary,* p. 809 (5th ed. 1983).

main property of the estate). If the plan or the order of confirmation is silent on the issue, the postconfirmation property vests in the debtor.

■ To answer the Trustee's specific question on how to classify postconfirmation tax refunds, the Court must analyze the plan or the order of confirmation on a case-by-case basis. In this matter, the Debtors made the following provision in their modified Chapter 13 plan concerning the receipt of any future tax refund:

> (b). **OTHER PROPERTY.** In the event other property is submitted to the Trustee, it shall be treated as advance payments under paragraph 1(a) above, except any tax refunds. Any net tax refunds for the first 36 months will be turned over to the Trustee but the refunds shall be used to reduce the duration of the plan, except the duration shall not decrease to fewer than 36 months.[3]

The plan clearly provides that any "net tax refunds" for the first thirty-six months of the plan shall be turned over to the Trustee.[4] Since the tax refunds are critical to the execution of the plan, the tax refunds received within the time period allotted, whether before or after confirmation, remain property of the estate. However, any tax refunds received after confirmation *and* the thirty-six month of the plan are *not* property of the estate. Therefore, this Court agrees with the Trustee to the extent that certain postconfirmation tax refunds remain property of the estate. However, the Court's analysis relies on 11 U.S.C. §§ 1306 and 1327(b) and a review of the plan—not just 11 U.S.C. § 1306.

■ Having determined that certain postconfirmation tax refunds are property of the

estate and do not vest in the Debtors under Section 1327(b), the Trustee has also asked the Court to address the issue of "disposable income." The term has been defined as income which the debtor receives and which is

> ... not reasonably necessary to be expended (A) for maintenance or support of debtor or a dependent of the debtor; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*See* 11 U.S.C. § 1325(b)(2). Of course, the term "income" is not defined under the Code. *Black's Law Dictionary* defines the term as "[t]he return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc.[5]" Such a broad definition would necessarily include tax refunds. As to the term "disposable income," it is important in the Chapter 13 context, since if a Chapter 13 trustee or a creditor objects to confirmation of a plan, a debtor must devote all of his or her *projected* disposable income to a plan of reorganization for the first three years of the plan. 11 U.S.C. § 1325(b)(1)(B).[6] Therefore, the requirement of a debtor devoting projected disposable income to a plan is consonant with the analysis of what constitutes property of the estate under Section 1306. Thus, if certain future wages are necessary for the execution of the plan, those future wages also constitute property of the bankruptcy estate.

■ In the *McCray* decision, the Court determined that certain postconfirmation tax refunds were not property of the estate and were not disposable income. The Court made the determination that the postconfirmation tax refunds were not disposable income, since they were necessary for the maintenance or support of the debtor.

---

3. See Debtors' Modified Chapter 13 Plan, Docket Entry No. 13, p. 1.

4. The term "net tax refunds" is not defined in the plan. However, the term generally refers to the funds which remain after setoff of any tax which is due and owing.

5. *Black's Law Dictionary*, p. 389 (5th ed. 1983).

6. 11 U.S.C. § 1325(b)(1)(B) provides:
 (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of

the plan, then the court may not approve the plan unless, as of the effective date of the plan—

 \* \* \* \* \* \*

 (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

*McCray,* 172 B.R. at 157–58. However, the projected disposable income should have been determined solely at the time of confirmation. If the debtor subsequently received a tax refund, the Court should have determined whether the tax refunds were property of the estate pursuant to the plan or order of confirmation and whether a modification of the plan was appropriate. In any event, the *McCray* court did not address the issue of whether a debtor could utilize assets received postconfirmation as advance payments under a plan of reorganization.

 In this case, the Debtors have committed certain postconfirmation tax refunds to the execution of their plan, irrespective of their projected disposable income. Therefore, the Court need not reach the projected disposable income issue. However, from the Court's standpoint, if the Trustee objects to confirmation of a debtor's plan, if the debtor's plan does not contain a provision concerning tax refunds, the Court will then analyze the debtor's projected disposable income at the time of confirmation, which analysis will necessarily consider the amount of the debtor's current withholdings and whether any tax refund will be generated postconfirmation. If the Debtors in this case have made proper projections concerning their withholdings for federal and state taxes, the postconfirmation tax refunds will be nonexistent or minimal. If the Debtors' calculations are incorrect, the Debtors have nevertheless committed to turning over certain postconfirmation tax refunds to the Trustee. Therefore, in the context of this case, the Court need not address the issue of what constitutes disposable income.

b. *The Bankruptcy Code Does Not Prohibit Advance Payments Under A Plan.*

 In a Chapter 13 proceeding, a debtor must include certain provisions in a plan of reorganization and may include others. 11

U.S.C. § 1322. The mandatory provisions are described as follows:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a). However, the debtor also has a great deal of discretion in including other terms and provisions. *See* 11 U.S.C. § 1322(b)(10).[7]

The Trustee argues that the Plan cannot be confirmed unless the order of confirmation discusses the issue of tax refunds and concludes that said postconfirmation tax refunds will be additional or supplemental payments under the Debtors' Plan. The Trustee advocates the same position as to any property received postconfirmation.

 This Court concludes that a debtor need not include a provision as to how subsequently received tax refunds are to be treated under the plan. This is consistent with 11 U.S.C. § 1322. However, a specific inclusion in a plan that the debtor intends to utilize any additional income received as an advance payment under a Chapter 13 plan is *not* prohibited as an impermissible plan provision under 11 U.S.C. § 1322. If the trustee or a creditor objects to the plan, then the debtor must provide only that the *projected* disposable income of the debtor for the next three years shall be applied to make pay-

7. 11 U.S.C. § 1322(b)(10) provides in pertinent part:
 (b) Subject to subsections (a) and (c) of this section, the plan may—
 \* \* \* \* \* \*
 (10) include any other appropriate provision *not* inconsistent with this title. [Emphasis added.]

ments under the Plan. 11 U.S.C. § 1325(b)(1)(B).[8] There is no discussion as to how the actual disposable income received is to be applied to payments required under the plan. Let us assume that a debtor is making payments of $100 per month to creditors under a confirmed plan. The debtor accidentally miscalculates his withholding, and receives a postconfirmation tax refund of $200. If the Chapter 13 trustee has objected to the plan, the debtor must provide all of his projected disposable income to the plan for at least thirty-six months. If the debtor has a thirty-seven month plan, why shouldn't the debtor be able to use the tax refund as the payment for two separate months under the plan? In essence, the debtor makes one plan payment early or in advance, or makes a lump-sum payment of $200 and shortens the plan's duration to thirty-six month. So long as under the hypothetical plan, the debtor does not shorten the plan to less than thirty-six months, isn't such an advance payment consistent with the Bankruptcy Code? The answer is in the affirmative.

c. *The Bankruptcy Court's Analysis of Good Faith At The Time of Confirmation Will Ensure That The Debtors Do Not Abuse Postconfirmation Tax Refunds As Advance Payments Under a Plan.*

 At the time of confirmation, the Bankruptcy Court must determine that the plan of reorganization complies with the Bankruptcy Code and Rules and is proposed in good faith. *In re Chinichian,* 784 F.2d 1440 (9th Cir.1986) (the debtors were afforded notice and a hearing on the issue of good faith); *In re Goeb,* 675 F.2d 1386 (9th Cir. 1982) (setting forth factors to determine good faith). *See also, Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.),* 113 B.R. 610 (9th Cir. BAP 1990) (determining that a debtor must proceed in good faith in the Chapter 11 context); *In re Stolrow's Inc.,* 84 B.R. 167 (9th Cir. BAP 1988) (reflecting that the bankruptcy judge reviews whether the filing of a plan has been in good faith based upon the "totality of circumstances").

As a part of its good faith analysis, the Court should also determine the likelihood and amount of any postconfirmation tax refunds and whether the amount of any postconfirmation tax refund may be reduced.

 The Trustee relies on *In re Schaitz,* 119 B.R. 637 (E.D.Wis.1989), *vacated and remanded on other grounds,* 913 F.2d 452 (7th Cir.1990), for the proposition that tax refunds should be supplemental payments to a plan which will not reduce the duration of a debtor's plan. In *Schaitz,* the court considered whether the chapter 13 plan had been proposed in good faith. *Id.* at 638. The *Schaitz* court analyzed the debtor's income, expenses and tax withholdings and commented on the treatment of tax refunds. The *Schaitz* court stated that

[b]ecause of the direct relationship between take home pay and tax refunds, it is the practice in this court to include in chapter 13 confirmation orders a provision that, in addition to the regular periodic payments to be made, all tax refunds received over the life of the plan are also to be paid into the plan. This supplement to the confirmation order will likely enhance the payments that are made to the creditors in this case during the life of the plan.

*Id.* at 640. Although this Court disagrees that the tax refunds should be supplemental payments, the *Schaitz* court did analyze whether the plan was proposed in good faith and, as a part of that analysis, the tax situation of the debtor.

Both the Trustee and the Debtors have referred this Court to the recent decision of *In re Anderson,* 21 F.3d 355 (9th Cir.1994). In *Anderson,* the trustee requested that the debtors sign a "Best Efforts Certification" which essentially required the debtors to pay all **actual** disposable income to the trustee. *Id.* at 357. Ultimately, the bankruptcy court denied confirmation of the debtors' plan because of the debtors' refusal to sign the Certification. *Id.* The Ninth Circuit held that under Section 1325(b)(1)(B), only *projected* disposable income, not actual disposable income, needed to be paid under the plan. *Id.* at 357–58. In addition, the *Anderson*

8. See, *supra,* note 6.

court stated that "disposable income" should be determined at the time of confirmation. *Id.* The Ninth Circuit found that (a) the trustee's attempt to require the debtors to pay actual disposable income to the trustee during the course of the plan and to be subjected to a periodic review by the trustee "imposed a more burdensome requirement in the debtor's plan as a prerequisite to confirmation," and (b) that the trustee was requesting the court to ignore 11 U.S.C. § 1329, which allowed the trustee to propose, and the debtor to object to, a modification of a confirmed plan. *Id.*

In this case, the Trustee is requesting that the Debtors be diligent in their plan payments and make the payments as agreed even though subsequent circumstances dictate that the Debtors have additional income to prepay or make advance payments under the plan.

■ Although the Court appreciates the Trustee's diligence and good intentions, the Court believes that the Ninth Circuit, in light of *Anderson,* may take a different approach. This approach may be to consider, at the time of confirmation, whether the debtor is proceeding in good faith. In such an analysis of good faith, the court should ask the debtor whether the debtor has reviewed his or her tax situation over the last year and whether the debtor is currently requesting an appropriate amount be withheld from his or her wages. In essence, at confirmation, the court should consider in determining *projected* disposable income *whether the proposed withholdings for taxes are at an appropriate level.* Once the court has determined that the debtor is proceeding in good faith, the plan may be confirmed. If the debtor has made a best efforts determination of projected disposable income and the withholdings are at an appropriate level, then if the debtor receives a tax refund, it should be *de minimus* in amount. If the debtor does receive a postconfirmation tax refund, the debtor may make an advance payment under the plan or request modification of the plan.

■ The Court recognizes that if such a tax analysis is done at confirmation, the trustee may not be able to request a modification of the plan pursuant to Section 1329. A confirmed plan acts as a contract between the debtor and the debtor's creditors until the plan is properly modified. *In re Hutchins,* 162 B.R. 1014, 1023 (Bankr.N.D.Ill.1994); *In re Emly,* 153 B.R. 57, 58 (Bankr.D.Idaho 1993). Section 1329 provides that after confirmation of a plan but prior to completion of all payments thereunder, a plan may be modified by the debtor, trustee or holder of an allowed unsecured claim. Such a modification may pertain to the reduction or extension of the term or duration of the plan. If the proposed modification is requested by the trustee, and a creditor or the debtor objects, then the trustee bears the burden of proof to show the debtor's ability to pay has changed substantially since confirmation and this change was unanticipated at the time of confirmation. *cf. In re Anderson,* 21 F.3d 355, 358 (9th Cir.1994) (relying, in *dicta,* on *In re Arnold,* 869 F.2d 240, 241 (4th Cir.1989)).

■ The courts, however, have not agreed upon an appropriate test to determine when a modification of a confirmed plan may occur. For instance, the Seventh Circuit has applied the plain meaning rule and has determined that there is no threshold requirement under Section 1329. The court concluded that a change in circumstance, unanticipated or anticipated, was not initially required to proceed under Section 1329. *In re Witkowski,* 16 F.3d 739, 742–44 (7th Cir. 1994). The *Witkowski* court also concluded that given the express provisions of the statute permitting a modification of a confirmed plan, the doctrine of *res judicata* did not apply. *Id.* at 745–46.

Finally, the *Witkowski* court also addressed the actual proposed modification and approved a modification of the debtor's plan. Initially the debtor had proposed paying unsecured creditors "10% of allowed claims." *Id.* at 741. The term of the plan was forty-seven months. *Id.* at 741. Because so few claims were filed by the deadline, the plan was actually projected to pay a greater percentage of the unsecured creditor's claims. The trustee, therefore, moved to modify the plan to provide a nineteen percent (19%) payment to the unsecured creditors. *Id.*

The *Witkowski* court approved this modification as being consistent with Section 1329. *Id.* at 746.

Certainly other courts have differed and concluded that a plan may not be modified unless the change is substantial and unanticipated. As to the "substantial" change prong of the test, this is not a defined term. Some courts have considered a substantial change to be "one which would shock the conscious." *In re Wilson,* 157 B.R. 389 (Bankr.S.D.Ohio 1993) (referring to *In re Arnold,* 869 F.2d 240 (4th Cir.1989)). In *Arnold,* the debtors annual income increased from $80,000 to $200,000. *Id.* The *Arnold* court ordered a modification of the confirmed plan to allow the creditors to share in the improvement of the debtors' financial situation. *Id.* at 241.

The courts have applied an objective test as to whether an event is unanticipated; that is, "whether the change could have been reasonably anticipated at the time of confirmation." *In re Wilson,* 157 B.R. 389, 390–91 (Bankr.S.D.Ohio 1993). *See also, In re Fitak,* 121 B.R. 224, 227 (S.D.Ohio 1990) (holding that unforeseen termination of employment and withdrawal of retirement funds was an unanticipated event; whereas, the selling of real property pursuant to plan provisions with the receipt of higher than estimated proceeds was an anticipated event); *In re Arnold,* 869 F.2d 240 (4th Cir.1989) (applying the objective test and finding that even though a fluctuation in income was expected, the $120,000 increase in the debtor's postconfirmation income could not be anticipated; thus, *res judicata* did not bar an upward adjustment in the amount of the plan payments).

The Ninth Circuit does not provide any real guidance in the area of modifications. Certainly the *Anderson* court seems inclined to follow the Fourth Circuit's decision of *In re Arnold.* The Bankruptcy Appellate Panel in the fairly recent decision of *In re Louquet,* 125 B.R. 267 (9th Cir. BAP 1991), seemed to be relying on a substantial change or an unanticipated change to warrant a modification. However, from this Court's standpoint, the *Witkowski* decision appears more consistent with the statutory provision on modification and should be followed, except that this Court believes some change in circumstance is necessary to propose a modification.[9] Whether the Ninth Circuit will adopt the *Witkowski* decision is unknown.

If the Court conducts a tax analysis at the time of confirmation, any postconfirmation tax refund received by the Debtors should be minimal. Therefore, the Trustee's need to seek a modification of the plan is concomitantly reduced. Moreover, these Debtors have at least agreed to devote any postconfirmation tax refunds received for a certain period of time to execution of their plan. Again this reduces the need for modification of the plan.

At this time, the Court has not been provided with any information as to whether the Debtors' withholdings are at an appropriate level. The issue of the withholding for taxes should be determined in the context of the Debtors' projected disposable income. The Court must still take evidence on these issues.

The Trustee and the Debtors have also requested this Court's position as to whether additional property may constitute an advance payment under the Debtors' plan and whether the Trustee may seek a modification of a confirmed plan subsequently. In this case, the additional property received postconfirmation during the term of the Plan would constitute an asset of the bankruptcy estate pursuant to the plan of reorganization. However, the Debtors may utilize said additional property to make advance payments under the plan. If the Trustee believes that the payments affect the Plan and, possibly in the Ninth Circuit, amount to a substantial and/or unanticipated change, the Trustee's recourse is to seek modification of the Plan under 11 U.S.C. § 1329.[10]

---

9. See this Decision, *infra,* starting at text around note 10.

10. For instance, if the Chapter 13 trustee knew that a personal injury law suit was pending at the time of confirmation, the trustee could object to confirmation of the plan unless the debtor agreed that any settlement proceeds would remain property of the bankruptcy estate. The Court could then determine, upon request, whether a modification of the plan was appropriate once the settlement or other proceeds were received. As

This Court prefers a liberal approach in permitting a modification of a plan; that is, that any change in circumstances should warrant a modification of a confirmed plan. Even though the statute does not specify a change in circumstances, one assumes some change is necessary or 11 U.S.C. § 1327(a), the effect of confirmation, has no meaning.[11] The decision of *In re Witkowski*, 16 F.3d 739 (7th Cir.1994) seems to be the best analysis on this issue. This Court recognizes that at least in the Ninth Circuit, a substantial or anticipated change[12] or a substantial and unanticipated[13] change may be necessary. However, the Court still believes that the Debtors' Plan may be confirmed with a provision concerning advance payments under the Plan, so long as the Debtors are proceeding in good faith and the other terms and conditions to confirm a plan are met.

### Conclusion

This Court concludes that at the time of confirmation, the Debtors should do an analysis of their projected disposable income. This analysis should include a determination of whether their withholding for taxes is at an appropriate level. If the Debtors are proceeding in good faith, the plan should be confirmed even if the plan provides that any postconfirmation tax refunds received by the Debtors shall be turned over to the Trustee and shall constitute advance payments under the plan. In essence, the Debtors are still paying the same amount to creditors under the plan as originally projected. The Debtors are simply accelerating the payments under the plan. This Court's analysis is also consistent with the Ninth Circuit decision of *In re Anderson, supra,* concerning the bankruptcy court's ability to determine only the projected disposable income of the debtor at the time of confirmation. Of course, the

Trustee shall have the right to seek a modification of the Plan under 11 U.S.C. § 1329, if subsequent circumstances so warrant.

At this time, no party has presented any evidence to the Court as to the Debtors' projected disposable income and the Debtors' analysis concerning their tax withholdings. Therefore, the Court will set a hearing on these issues.

---

a practical matter, if a sizeable settlement is received postconfirmation, the trustee and the debtor may work on a consensual modification of the plan to provide for a one hundred percent payment to all creditors and the prompt termination of the plan.

**11.** § 1327. Effect of confirmation.

 (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not

the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

**12.** *In re Louquet,* 125 B.R. 267 (9th Cir. BAP 1991).

**13.** *In re Anderson,* 21 F.3d 355 (9th Cir.1994) (*dicta*).