**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In re: TRAK AUTO CORPORATION,
                              *Debtor.*

TRAK AUTO CORPORATION, d/b/a
Grundy Auto, d/b/a Twin B Auto,
                    *Plaintiff-Appellee,*

CONGRESS FINANCIAL CORPORATION
(CENTER); A&E STORES,
INCORPORATED,
              *Intervenors-Appellees,*

              v.

WEST TOWN CENTER LLC,
                    *Defendant-Appellant,*

              and

UNITED STATES TRUSTEE,
                              *Trustee.*

INTERNATIONAL COUNCIL OF SHOPPING
CENTERS, ICSC,
          *Amicus Supporting Appellant.*

No. 03-1136

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-02-466; BK-52-1281465)

Argued: October 29, 2003

Decided: April 22, 2004

Before WILKINSON, MICHAEL, and SHEDD, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

---

**COUNSEL**

**ARGUED:** Matthew Ward Schlegel, KUPELIAN, ORMOND & MAGY, P.C., Southfield, Michigan, for Appellant. Peter Gilbert Zemanian, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellees. **ON BRIEF:** Paul K. Campsen, J. Ellsworth Summers, Jr., KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellant. James T. Lloyd, Jr., TRAPANI, BERNARD & LLOYD, Norfolk, Virginia; John C. McLemore, TINKHAM & McLEMORE, Norfolk, Virginia, for Appellees. Thomas J. Lease, Dustin P. Branch, KAT-TEN, MUCHIN, ZAVIS & ROSENMAN, Los Angeles, California, for Amicus Curiae.

---

**OPINION**

MICHAEL, Circuit Judge:

A Chapter 11 debtor-tenant sought to assign its shopping center lease in contravention of a provision that limits use of the premises to the sale of auto parts. The bankruptcy and district courts approved the assignment, and the lessor and owner of the shopping center appeals. We are asked to resolve the conflict between 11 U.S.C. § 365(f)(1), which generally allows a debtor to assign its lease notwithstanding a provision restricting assignment, and § 365(b)(3)(C), which specifically requires a debtor-tenant in a shopping center to assign its lease subject to any provision restricting use of the premises. We hold that § 365(b)(3)(C), the more specific provision, controls in this case. As a result, we reverse and remand.

I.

Trak Auto Corporation (Trak Auto) is a retailer of auto parts and accessories that once operated 196 stores in Virginia, eight other states, and the District of Columbia. On July 5, 2001, in the Eastern District of Virginia, Trak Auto filed a petition under Chapter 11 of the Bankruptcy Code and continued in business as debtor in possession. As part of its effort to reorganize, Trak Auto obtained court approval to close its stores in four states, Illinois, Indiana, Michigan, and Wisconsin. Thereafter, Trak Auto sought to assume and assign certain of its leases of retail space where stores had been closed. One of these leases (the West Town lease or the lease) is at West Town Center, a shopping center in Chicago. Trak Auto's lessor and the owner of the shopping center is West Town Center LLC (West Town), the appellant.[1] The West Town lease contains explicit use restrictions. Section 1.1(L) limits "PERMITTED USES" to the "[s]ale at retail of automobile parts and accessories and such other items as are customarily sold by Tenant at its other Trak Auto stores." J.A. 579. In section 8.1 Trak Auto "covenants . . . to use the Leased Premises only as a Trak Auto Store and for the Uses provided in Section 1.1(L)." J.A. 588.

Trak Auto engaged a real estate firm to advertise the availability of the West Town lease and to solicit bids. Of the bids received, none came from an auto parts retailer. The high bidder was A&E Stores, Inc. (A&E), an apparel merchandiser that offered $80,000 to buy out the lease. If A&E obtains the lease, it will open a Pay Half store on the premises, selling brand name family apparel at discount prices.

In a motion filed in the bankruptcy court, Trak Auto sought an order authorizing it to assume the West Town lease and to assign it to A&E. West Town, Trak Auto's lessor, objected on two grounds. First, West Town argued that the proposed assignment would breach the lease provision limiting use to the sale of auto parts and accesso-

---

[1]LaSalle National Trust, N.A. was the original lessor and the actual party opposing the assignment in the bankruptcy and district courts. After LaSalle appealed to this court, West Town became the owner of the shopping center and Trak Auto's lessor. West Town has been substituted as the appellant, so we will use "West Town" to refer to both West Town and its predecessor, LaSalle.

ries. According to West Town, this use provision was enforceable under 11 U.S.C. § 365(b)(3)(C). (West Town did not rely on the lease restriction that said the premises could be used "only as a Trak Auto Store.") Second, West Town argued that the assignment would disrupt its shopping center's tenant mix in violation of § 365(b)(3)(D). Trak Auto responded that the use restrictions in the lease were unenforceable anti-assignment provisions under § 365(f)(1) and that an assignment to A&E would not, as a matter of fact, disrupt the tenant mix.

The bankruptcy court held an evidentiary hearing and made the following factual findings, which we accept. The West Town shopping center is in an urban area (Chicago) where only fifty-nine percent of the population own cars. The shopping center is surrounded by competing shopping areas not owned by West Town. The twenty-five tenants in West Town Center include clothing stores, food vendors, a K-Mart, a laundromat, a travel agency, a bank, a cash advance (or small loan) agency, an adult entertainment outlet, and a public library branch. Trak Auto was the shopping center's only auto parts retailer, but there are seven auto parts retailers within three miles of the center. After announcing its factual findings, the bankruptcy court issued its conclusions. First, the court concluded that the lease's use restrictions amounted to anti-assignment provisions that were prohibited by § 356(f)(1) of the Bankruptcy Code. Second, the court concluded that West Town did not present sufficient evidence to support a finding that assignment of the lease to A&E would disrupt the tenant mix at West Town Center. Based on these conclusions, the bankruptcy court entered an order granting Trak Auto's motion to assume the West Town lease and, in turn, to assign it to A&E.

West Town filed a notice of appeal to the district court, and the bankruptcy court stayed its order pending appeal. The district court affirmed, and West Town then appealed to our court. We have also granted a stay. On October 7, 2003, three weeks before oral argument, West Town filed a motion to dismiss its own appeal as moot, arguing that its lease to Trak Auto had expired by its own terms on September 30, 2003. We deferred a ruling on the motion, which we take up now.

## II.

West Town moves to dismiss its appeal as moot, arguing that Trak Auto no longer has any lease to assign. The facts relevant to West

Town's motion are undisputed. Trak Auto's lease from West Town ran through September 30, 2003, but automatically extended for another sixty months if Trak Auto was not in material default. After Trak Auto filed for bankruptcy in July 2001, it made post-petition rent payments to West Town for several months, *see* 11 U.S.C. § 365(d)(3), but stopped making these payments after December 2001. On March 12, 2002, West Town filed a motion requesting the bankruptcy court to order Trak Auto to pay administrative rent due under § 365(d)(3). The court determined that West Town had a valid administrative claim for rent, but the court declined to make a specific order about payment timing, deferring that issue until a decision was made on whether Trak Auto could assign the lease.

The bankruptcy court later entered an order allowing Trak Auto to assign the lease to A&E; the order provided that West Town would be paid the administrative rent from proceeds of the assignment. This meant that West Town would not be paid the rent until the assignment was concluded. The assignment was put on hold by stays pending appeal issued by the bankruptcy court and this court *at the request of West Town*. Furthermore, West Town did not object to or appeal the part of the bankruptcy court's order that deferred Trak Auto's time for payment of the rent. In light of all of this, West Town surely understood two things: first, that appeal of any decision allowing the assignment would take some time; and second, that the term of the lease would automatically extend on September 30, 2003, if an appeal was then pending because Trak Auto would not yet be obligated to deliver the rent payment according to the unchallenged provision in the bankruptcy court's order. In these circumstances, we conclude that West Town has waived any argument in this appeal that the lease has expired because Trak Auto has not paid accrued post-petition rent. *See In re Lane*, 991 F.2d 105, 107 (4th Cir. 1993); *In re Arnold*, 869 F.2d 240, 244-45 (4th Cir. 1989). West Town's motion to dismiss the appeal is accordingly denied.

III.

Today's substantive issue requires us to deal with the conflict between two provisions in § 365 of the Bankruptcy Code dealing with the assignment of a lease by a debtor (or trustee). Section 365(b)(3)(C) specifically requires a debtor-tenant at a shopping center

to assign its store lease subject to any provision restricting the use of the premises. On the other hand, § 365(f)(1) generally allows a debtor to assign its lease notwithstanding a provision restricting assignment. In this case, the bankruptcy court permitted Trak Auto to assign its shopping center lease to the highest bidder, refusing to enforce the restriction that required the premises to be used for the retail sale of auto parts and accessories. The district court affirmed. The legal issue is dispositive of this appeal, and we (like the district court) review the bankruptcy court's legal conclusions de novo. *See Butler v. David Shaw, Inc.*, 72 F.3d 437, 440-41 (4th Cir. 1996). We hold that § 365(b)(3)(C) controls in this case. This means that the bankruptcy court erred in permitting Trak Auto to assign its lease to an apparel merchandiser that would not honor the use restriction. Our analysis follows.

Section 365(a) allows a Chapter 11 debtor to assume an unexpired lease. 11 U.S.C. § 365(a). The debtor may, in turn, assign the lease if the assignee provides "adequate assurance of future performance." *Id.* § 365(f)(2)(B). When a debtor-tenant in a shopping center seeks to assign its lease, the "adequate assurance of future performance" must include specific assurances that are spelled out in the Code. Most important to this case, there must be adequate assurance that assignment of a shopping center lease "is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center." *Id.* § 365(b)(3)(C). Section 365(f)(1), on the other hand, contains a general provision that prohibits the enforcement in bankruptcy of anti-assignment clauses in leases. This section allows a debtor to assign a lease "notwithstanding a provision . . . that prohibits, restricts, or conditions . . . assignment." *Id.* § 365(f)(1). Again, we must decide whether Congress intends, notwithstanding § 365(f)(1), for a debtor's assignee to provide adequate assurance that it will comply with use restrictions in a shopping center lease, such as the restriction here that limits the use of the space to the sale of auto parts and accessories.

We begin our inquiry with a look at the interesting history of Congress's efforts to protect shopping center landlords in § 365(b)(3) of the Bankruptcy Code. Congress has been interested in the financial

well-being of shopping centers since at least the late 1970s. Specifics, such as the importance of a carefully selected tenant mix, have not escaped Congress's attention. The House Judiciary Committee discussed the tenant mix subject in a 1977 report:

> A shopping center is often a carefully planned enterprise, and though it consists of nuemrous [sic] individual tenants, the center is planned as a single unit, often subject to a master lease or financing agreement. Under these agreements, the tenant mix in a shopping center may be as important to the lessor as the actual promised rental payments, because certain mixes will attract higher patronage of the stores in the center.

H.R. Rep. No. 95-595, at 348 (1977). To maintain proper tenant mix, that is, store variety, shopping center landlords have routinely placed use restrictions in leases. Before 1978 the bankruptcy of a shopping center tenant with a use restriction did not present an inordinate problem for a landlord; the typical lease provided that the landlord could terminate the lease if the tenant went bankrupt. The termination option allowed the landlord to engage a new tenant that would contribute to an acceptable mix of stores. *See* Jeffrey S. Battershall, *Commercial Leases and Section 365 of the Bankruptcy Code*, 64 Am. Bankr. L.J. 329, 329 (1990). With the enactment of the Bankruptcy Reform Act of 1978 (the 1978 Act), however, landlords "were no longer able to regain control of the leased property in the event of bankruptcy, and the lease routinely became part of the debtor's estate to be administered" in the bankruptcy. *Id.* at 330. *See* 11 U.S.C. § 365(e). Still, shopping center landlords were able to persuade Congress that they needed special protection, which Congress attempted to write into the 1978 Act. The 1978 legislation provided that a debtor-tenant could not assign its shopping center lease unless there was adequate assurance that "assignment of [the] lease [would] not breach *substantially* any provision, such as a radius, location, use, or exclusivity provision, *in any other* lease, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3) (1982) (emphases added).

Shopping center landlords soon realized that the 1978 provisions did not provide them with sufficient protection against debtor-tenant

lease assignments that were being made in breach of use (and other) restrictions, with the approval of bankruptcy courts. For example, debtors avoided the 1978 provisions by convincing bankruptcy courts that an assignment would not "breach substantially" a use, radius, location, or exclusivity provision in another lease. *See id.* § 365(b)(3)(C) (1982). And, debtors were able to convince courts that even though an assignment would breach a use provision in the lease sought to be assigned, the assignment could proceed because the 1978 Act only prevented assignment if *some other* lease or agreement relating to the shopping center would be breached. *See id.* Shopping center landlords were, as a result, able to convince Congress that bankruptcy courts were too often "creating new [shopping center] leases by changing essential lease terms to facilitate assignments" by debtor-tenants. 130 Cong. Rec. S8891 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.C.C.A.N. 590, 600. Congress was told that this practice of avoiding use restrictions was creating problems with tenant mix in affected shopping centers. These locations were losing their balance-of-merchandise drawing card, which was a threat to overall sales revenues in the shopping center sector of the economy. *See* Battershall, *supra*, at 334-35.

Congress responded in 1984 by amending the shopping center provisions in the Bankruptcy Code. Among other things, § 365(b)(3)(C) was amended to delete the word "substantially" from the provision previously requiring that assignment of a shopping center lease must not "breach substantially" certain restrictions. This section was also amended to provide that any assigned shopping center lease would remain subject to all of the provisions of the lease and not just the provisions of "any other lease" relating to the center. Again, the amended provision that we interpret today provides: "adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance . . . that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision." 11 U.S.C. § 365(b)(3).

This background brings us to the matter of resolving the conflict between § 365(f)(1), a general provision that permits lease assignment notwithstanding anti-assignment clauses, and § 365(b)(3)(C), a more specific provision that requires the assignee of a shopping center lease

to honor a clause restricting the use of the premises. For guidance in sorting out the conflict, we turn to the canons of statutory construction. *See In re Windsor on the River Assocs., Ltd.*, 7 F.3d 127, 130 (8th Cir. 1993). When two provisions in a statute are in conflict, "a specific [provision] closely applicable to the substance of the controversy at hand controls over a more generalized provision." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 302 (4th Cir. 2000) (internal quotation marks and citation omitted). *See also* Norman J. Singer, 2A Sutherland Statutes and Statutory Construction § 46:05 (6th ed. 2000). Under this canon, § 365(b)(3)(C) controls because it speaks more directly to the issue, that is, whether a debtor-tenant assigning a shopping center lease must honor a straightforward use restriction. This construction is consistent with "the purpose[ ] Congress sought to serve." *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 36 (1983) (internal quotation marks and citation omitted). Congress's purpose is clear from the history (recited above) that culminated in the 1984 shopping center amendments to the Bankruptcy Code and from the language of § 365(b)(3)(C) after those amendments. Specifically, when a shopping center lease is assigned in bankruptcy, Congress's purpose in § 365(b)(3)(C) is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are spelled out in the lease with the debtor-tenant. *In re Ames Dep't Stores, Inc.*, 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990). We therefore hold that because A&E does not propose to take the West Town lease subject to the specific restriction limiting use of the premises to the sale of auto parts and accessories, Trak Auto's motion to assume and assign the lease must be denied.

The bankruptcy and district courts gave this case careful attention, and we owe them a further explanation as to why we are rejecting their particular approaches. The bankruptcy court concluded that because no auto parts dealer bid on the West Town lease, the market in the area is saturated and "cannot bear [the] restriction" limiting use to the sale of auto parts and accessories. J.A. 421. According to the bankruptcy court, the market has turned the use restriction into an anti-assignment clause that is unenforceable under § 365(f)(1). This analysis overlooks the fact that West Town, the shopping center landlord, made the judgment that an auto parts retailer is important to a successful mix of stores in the center. And, in its lease with Trak

Auto, West Town successfully negotiated to have the leased space dedicated to the sale of auto parts. West Town insists that this use restriction be honored by any assignee of Trak Auto, and that is West Town's right under § 365(b)(3)(C), regardless of market conditions. Section 365(b)(3)(C) simply does not allow the bankruptcy court or us to modify West Town's "*original* bargain with the debtor." S.Rep. No. 98-65, at 67-68 (1983) (emphasis added).

The district court concluded that the use restriction in the West Town lease was an unenforceable anti-assignment clause under § 365(f)(1) because the lease says that the tenant must use the premises "only as a Trak Auto Store." J.A. 588. West Town does not seek to restrict assignment to a tenant operating a Trak Auto store, and the parties have proceeded on that understanding. *See Amer. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 509 (4th Cir. 1995) (parties to a lease are free to modify it). The Trak Auto store designation is thus not in the picture, and West Town is free to enforce the remaining restriction that limits use of the premises to the retail sale of auto parts and accessories.

Our decision to block Trak Auto's lease assignment is not an attempt on our part to water down one of the important purposes of Chapter 11. That purpose is to give business debtors with some prospects the opportunity to reorganize, revive their operations, and continue in existence. The assumption and assignment of leases can be an important part of this effort. *See In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999). Shopping center leases are in a special category, however, because Congress has made it more difficult for debtor-tenants to assign these leases in Chapter 11. This special protection for shopping center landlords, as spelled out in § 365(b)(3)(C), dictates the result in today's case. But this does not mean that § 365(f)(1) can never be used to invalidate a clause prohibiting or restricting assignment in a shopping center lease. *But see In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1090 (3d Cir. 1991) (concluding that § 365(b)(3) (1982) rendered § 365(f)(1) inapplicable to shopping center leases). A shopping center lease provision designed to prevent any assignment whatsoever might be a candidate for the application of § 365(f)(1). For example, Senator Hatch, in explaining the 1984 amendment to § 365(b)(3)(C), said that the "amendment is not intended to enforce requirements to operate under a specified trade

name." 130 Cong. Rec. S8891 (daily ed. June 29, 1984), *reprinted in* 1984 U.S.C.C.A.N. 590, 600. Senator Hatch's comment suggests that Congress did not intend to make § 365(f)(1) completely inapplicable to shopping center leases. Of course, the issue of when § 365(f)(1) might apply is a subject for some future case.

IV.

In conclusion, we deny West Town's motion to dismiss this appeal as moot. On the merits, we hold that because A&E does not propose to take the West Town lease subject to the restriction limiting premises use to the retail sale of auto parts and accessories, Trak Auto's motion in bankruptcy court to assume and assign the lease must be denied under 11 U.S.C. § 365(b)(3)(C). The district court's order to the contrary is reversed. On remand the district court will return the case to the bankruptcy court for the entry of an order consistent with this opinion.[2]

*REVERSED AND REMANDED*

---

[2]Because our decision under § 365(b)(3)(C) disposes of the case, we do not reach West Town's argument that the bankruptcy court erred in finding (a finding affirmed by the district court) that the proposed assignment would not disrupt the tenant mix in West Town Center. *See* 11 U.S.C. § 365(b)(3)(D).