**In re Lillie SMITH, Debtor.**

**Bankruptcy No. 96-93247.**

United States Bankruptcy Court,
E.D. Texas,
Lufkin Division.

July 30, 1999.

.

---

Thomas W. Deaton, Lufkin, TX, for Debtor.

Mynde S. Eisen, Houston, TX, for BNB.

John Talton, Tyler, TX, for Michael Gross, Chapter 13 Trustee.

## MEMORANDUM OF DECISION AFFIRMING COMPLETION OF DEBTOR'S CHAPTER 13 PLAN AND DIRECTING ENTRY OF DISCHARGE ORDER

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court on the Notice of Plan Completion and Order Setting Discharge filed by Michael Gross, Chapter 13 Trustee, ("Trustee") in the above-referenced case. Based upon the Court's consideration of the pleadings, the evidence admitted at the hearing, including the stipulations of the parties, and the argument of counsel, the Court makes the

following findings of fact and conclusions of law[1] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bank. P. 7052 and 9014.

## I. JURISDICTION

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FINDINGS OF FACT

The Debtor, Lillie Smith ("Debtor"), filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 12, 1996. Included among the creditors to whom the Debtor was indebted at the time of the filing was Bayshore National Bank of LaPorte ("BNB") in the total amount of $12,857.85. On April 16, 1997, this Court, the Hon. Houston Abel presiding, entered an agreed order bifurcating BNB's claim into a secured claim of $9,500.00 and an unsecured claim of $3,357.00.

The Debtor's Second Amended Chapter 13 Plan (the "Plan") was subsequently confirmed with notice to all appropriate parties on June 18, 1997. Such confirmation was over the objection of BNB. The order confirming the Plan provided that the Debtor would pay a total of $14,495.27 in fifty-six (56) monthly payments to the Chapter 13 Trustee for distribution to her creditors. From that sum, BNB's secured claim would be paid over a period of forty-eight (48) months, with a portion of its unsecured claim to be paid in subsequent months of the Plan.

Prior to the time that the Debtor was to make the twenty-seventh (27th) of her fifty-six monthly payments required by the confirmed Plan, she received a gift from her family of $7,755.55. This amount represented the total amount due and owing by the Debtor to the Trustee for months 27 through 56 under the Plan and apparently was specifically given to the Debtor by her family for the purpose of allowing her to complete her obligations under the Plan. The Debtor tendered that sum to the Trustee. The Trustee accepted the money and thereafter distributed it to creditors pursuant to the provisions of the confirmed Plan.

After distributing the money to creditors, the Trustee filed a "Notice of Plan Completion and Order Setting Discharge." This Notice informed creditors and other parties in interest of the Trustee's conclusion that the Debtor had completed payments and performance under the confirmed chapter 13 plan. It further notified creditors that any objections to the Trustee's final accounting must be filed with the Court within twenty-five (25) days from the date of the notice or an order of discharge would be entered without further hearing.

BNB was the only party to file an objection pursuant to the Notice. In its objection, BNB asserted that the Debtor was not yet entitled to a discharge because she had failed to submit all of her disposable income to the plan or to make payments for a minimum of thirty-six (36) months. Although not raised in its Objection[2], BNB subsequently presented a memorandum of law and argued at the hearing that the Debtor's lump-sum payment should be construed by the Court to be a motion by the Debtor to approve a post-confirmation modification of the Plan, pursuant to 11

---

1. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

2. No party objected to BNB's presentation of this issue at the hearing, thus the Court will deem that it was tried by consent.

U.S.C. § 1329(a)(2), to change the duration of the plan from 56 months to 27 months, which BNB urged the Court to deny because of the reasons expressed in its Objection.

## III. CONCLUSIONS OF LAW

■ The time at which a chapter 13 debtor becomes entitled to a discharge is governed by 11 U.S.C. § 1328(a), which provides in relevant part as follows:

> As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for in the plan or disallowed under section 502 of this title....

Thus, when a chapter 13 debtor tenders a lump-sum payment to a chapter 13 trustee which satisfies all amounts due under a confirmed chapter 13 plan, it would seem, by the plain language of the Bankruptcy Code, that such payment entitles such debtor to a discharge as of that time.

Yet BNB challenges that reading of § 1328(a) as too simplistic and argues that such an interpretation improperly erodes the protections provided to unsecured creditors under 11 U.S.C. § 1325(b)(1)[3], which directs that, unless unsecured creditors are being paid in full, a chapter 13 plan cannot be confirmed over the objection of the trustee or an unsecured creditor unless a debtor commits all of her projected disposable income over the first three years of the plan to make payments under such plan. According to BNB, the application of § 1325(b)(1) requires this Debtor to continue making plan payments for a minimum term of thirty-six (36) months, notwithstanding the fact that the Debtor has admittedly tendered to the Trustee, and the Trustee has distributed, all of the sums due and owing and expected to be received by creditors, including BNB, under the confirmed Plan and for which the creditors, absent the gift from the Debtor's family, would have been forced to wait for an additional thirty (30) months.

■ BNB's reliance upon § 1325(b)(1) in this situation is misplaced. § 1325(b)(1) is a plan confirmation statute. It contributes to a court's determination as to whether a chapter 13 plan can be confirmed. Specifically, it governs the determination of the precise amount which a chapter 13 debtor is required to pay in order to confirm a chapter 13 plan over the objection of a trustee or unsecured creditor and, by its plain language, a failure to comply with its provisions at that particular time can lead to only one consequence —"the court may not approve the plan...."

■ However, that determination has already been made in this case. It was determined in June, 1997 at the confirmation hearing. It was at that time that parties in this case had the opportunity to contest the accuracy of the *projected* disposable income of this debtor. It was at that time that Judge Abel determined that this Debtor was, in fact, contributing all of her projected disposable income for the required period in compliance with § 1325(b)(1) and that the plan met all of the other prerequisites for confirmation under § 1325. Once the confirmation order became a final order, the provisions of § 1325(b)(1) were no longer applicable to this case, absent a timely request for modi-

---

**3.** § 1325. Confirmation of Plan....

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

fication of the plan. As discussed below, no such request was filed in this case within the required time period. Thus, since the time that the confirmation order became a final order, the Debtor, BNB, and all other creditors have been bound by the provisions of the confirmed plan and are entitled to receive the amount of payments designated by that confirmed plan. 11 U.S.C. § 1327(a); *In re Clark,* 172 B.R. 701, 703 (Bankr.S.D.Ga.1994); *In re Engel,* 151 B.R. 542, 543 (Bankr.D.Idaho 1993).

That is precisely what BNB and all other unsecured creditors have received from this Debtor—all of the payments equivalent to her disposable income, as projected at the confirmation hearing, for months 27 through 56 under the confirmed Plan. Yet the creditors have received their respective distributions two and one-half years early due to the unexpected action of the Debtor's family, whose contribution of otherwise unreachable non-estate assets has enabled the creditors to receive such an accelerated distribution.

■ To create the only[4] environment under which it could legitimately escape the *res judicata* effect of the confirmation order and possess at least an arguable[5] basis for urging the reapplication of the § 1325(b)(1) disposable income standards to this Debtor, BNB attempts to transpose the real issue of the Debtor's entitlement to discharge under the language of § 1328(a) into a dispute regarding a post-confirmation modification of a chapter 13 plan under § 1329(a).[6] Since BNB was statutorily precluded by the plain language of § 1329(a)[7] from bringing its own request for a post-confirmation modification, it seeks to characterize the Debtor's prepayment of her plan amounts as an "implied" motion to approve a post-confirmation modification of her confirmed Plan.[8]

---

4. Actually, it is the only environment relevant to this case. The Court acknowledges that such a result could also arise from the presentation and determination of a complaint alleging that the confirmation of the original plan was obtained by fraudulent means. However, no allegation or complaint of such nature has been made in this case.

5. It would be merely arguable because a split of authority exists as to whether the standards of § 1325(b)(1) even apply to a motion for approval of a post-confirmation modification, *see, e.g. Forbes v. Forbes (In re Forbes),* 215 B.R. 183, 190–92 (8th Cir. BAP 1997), and the Court expresses no opinion on that issue.

6. § 1329. Modification of Plan After Confirmation....
   (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon the request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
   (1) increase or reduce the amounts of payments on claims of a particular class provided for by the plan;
   (2) extend or reduce the time for such payments; or
   (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

7. § 1329(a) clearly requires that any request for a post-confirmation modification of a confirmed chapter 13 plan must be presented "...before the completion of payments under such plan."

8. It is not surprising that BNB cannot cite any authority in support of such a characterization. This is a rather disinguous attempt by BNB to place this case within the scope of cases it cited to the Court, including *In re Guentert,* 206 B.R. 958 (Bankr.W.D.Mo.1997) and *In re Easley,* 205 B.R. 334 (Bankr. M.D.Fla.1996), in which a debtor filed a motion for authority to tender the balance owed before actually tendering such money to the trustee. Those courts construed such an action as a motion to modify a confirmed plan after confirmation, since plan payments had clearly not been completed, and thereafter proceeded to decide such cases under § 1329. However, the Debtor in this case in one accelerated effort simply made every payment contemplated by the confirmed plan. No motion was filed nor was one necessary. To the extent that the courts in *Guentert* and *Easley* would avoid characterizing a single prepayment of all amounts due and owing under a confirmed plan as a "completion" of payments under § 1328(a) and would instead construe such an action by a debtor as an "implied" motion for a post-confirmation modification, this Court would respectfully disagree. *Accord, Matter of Casper,* 154 B.R. 243, 246 (N.D.Ill.1993).

However, the Debtor has not sought, nor does she need, a plan modification. The Chapter 13 Trustee, by filing his "Notice of Plan Completion and Order Setting Discharge," has affirmed to the Court and to all creditors that, under his calculations, this Debtor has completed all payments required by the confirmed Chapter 13 plan and is entitled to the entry of a discharge order under § 1328(a). As the Trustee's Notice states, its purpose is to allow creditors the opportunity to review and to challenge the Trustee's final accounting, and the arithmetic issue regarding the accuracy of the Trustee's calculations is the only issue properly before the Court in this instance. Unless it is shown by a preponderance of the evidence that the amount due and owing by the Debtor under the confirmed plan differs from the amount actually paid by the Debtor, the Debtor is entitled to the entry of the discharge order pursuant to the plain language of § 1328(a). No such showing has been made by BNB in this case.

BNB may believe that a statutory scheme which would allow a debtor to prepay its plan obligations without notice, and thereby preclude any other party from subsequently seeking a post-confirmation modification of the debtor's plan under § 1329, is unfair. It may believe that, even if all plan payments have been made, a debtor should not be entitled to the entry of a discharge order in the absence of an opportunity for creditors to conduct an examination of the circumstances under which a debtor became capable of tendering such a prepayment.

■ However, no such prerequisites exist with regard to the entry of a discharge order in a Chapter 13 case. § 1328(a) clearly compels a bankruptcy court to issue a discharge to a debtor "[a]s soon as practicable after completion by the debtor of all payments under the plan...." Thus, without providing advance notice to any party, a Chapter 13 debtor may tender all the payments due and owing under a confirmed plan on an acceler-

ated basis and thereby create an entitlement to a discharge. *In re Bergolla*, 232 B.R. 515 (Bankr.S.D.Fla.1999)[debtors entitled to discharge over objection of trustee demanding modification when, after making five payments toward a sixty-month plan, they satisfied without notice all payments required to be made in the chapter 13 plan]. *In re Martin*, 232 B.R. 29, 37 (Bankr.D.Mass.1999) ["I find nothing in the statute which prohibits prepayment where no prepayment discount is sought. A lump sum payment in the aggregate amount of the Debtors' disposable income during the three years of the Plan is simply an anticipatory satisfaction of the obligations under the Plan and is permissible."]. Once all of the payments prescribed by the confirmed plan are made, whether received by the trustee singularly over a series of months, or received in an aggregate amount in one prepayment, this Court is of the opinion that such a debtor has accomplished a "completion....of all payments under the plan" and becomes at that moment statutorily entitled to the entry of a discharge under the plain language of § 1328(a). *Matter of Casper*, 154 B.R. 243, 246–47 (N.D.Ill.1993); *In re Phelps*, 149 B.R. 534, 537 (Bankr.N.D.Ill.1993).

■ The position advocated by BNB would actually discourage debtors from using their best efforts to pay creditors as expeditiously as possible. No perceptive debtor would even consider securing money from family members, or placing an exempt homestead at risk by obtaining a home equity loan, for the purpose of expediting payments to creditors under a confirmed plan, if such creditors could simply confiscate those funds and then demand continued performance. This statutory scheme, under which a Chapter 13 debtor may tender all the payments due and owing under a confirmed plan on an accelerated basis, and thereby create an entitlement to a discharge under § 1328(a) without providing advance notice to any party, advances the interests of creditors in the vast majority of cases

by encouraging debtors to investigate and to utilize all available means to expedite the completion of plan payments to creditors.[9]

The Debtor in this case has fully performed the obligations set forth in her confirmed chapter 13 plan and BNB has acknowledged that it has received all payments to which it was entitled under that plan. The Court accordingly concludes that this Debtor is entitled to the immediate entry of an order of discharge pursuant to § 1328(a). A separate order will be entered which is consistent with this opinion.

9. For those extremely rare circumstances under which a debtor's prepayment is actually an affirmative attempt to defraud creditors by concealing an economic windfall, the Code provides that a discharge entered under such circumstances can be revoked. 11 U.S.C. § 1328(e).