**In re Frayne SUNAHARA, Debtor.**

**Frayne Sunahara, Appellant,**

**v.**

**David Burchard, Chapter 13 Trustee, Appellee.**

**BAP No. NC–04–1327–SHB. Bankruptcy No. 03–32816 DM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 20, 2005 at San Francisco, California.

Filed—June 27, 2005.

Cathleen Cooper Moran, Moran Law Group, Inc., Mountain View, CA, for appellant.

Adam N. Barasch, Office of David Burchard, Foster City, CA, for appellee.

Before: SMITH, HOLLOWELL [1], and BRANDT, Bankruptcy Judges.

1. Hon. Eileen W. Hollowell, Bankruptcy Judge for the District of Arizona, sitting by designation.

## OPINION

SMITH, Bankruptcy Judge.

At issue in this appeal is whether a debtor may modify a confirmed 36–month chapter 13 [2] plan so as to pay it off in a single lump sum and receive an early discharge. The bankruptcy court held that debtor, Frayne Sunahara, was not so entitled. We REVERSE and REMAND.

## FACTS

Debtor commenced his chapter 13 case on September 26, 2003. The San Francisco and Oakland divisions of the Northern District of California have adopted a mandatory model chapter 13 plan. The model plan includes a provision providing that "[u]nless all allowed claims are paid in full, this Plan shall not be completed in fewer than 36 months from the first payment date." All versions of Debtor's plan include this required provision.

The chapter 13 trustee objected to Debtor's initial plan but the objections were resolved through Debtor's third amended plan which was filed on May 3, 2004. This version of the plan provides for payment of $41,400 over 60 months, an estimated dividend of 50% to unsecured creditors. The hearing on the confirmation of the third amended plan was set for May 12.

One day prior to the confirmation hearing, on May 11, Debtor filed a pleading entitled "Motion to Refinance Real Estate, Pay Plan Base, and Terminate Case" ("Motion"). According to Debtor, a condition of his refinance loan was that the chapter 13 plan be completed and the case terminated. By the Motion, Debtor sought authority to refinance his real property for the purpose of paying in full the

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

plan base ($41,400) and receiving an immediate discharge. Debtor acknowledged that granting the relief requested would effect a modification of that part of the model plan which requires 100% payment to unsecured creditors if the plan is completed in less than 36 months, but suggested that the court reconsider the deletion of that provision on the ground that neither the law nor equity requires a plan to run 36 calendar months.[3] More specifically, Debtor argued that: 1) while § 1325(b) prescribes the amount of *money* that must be paid into the plan, i.e., based on projected disposable income over the 36–month period, it does not prescribe the amount of *time* that must elapse for distributing such amount of money; 2) the required pledge of *projected* disposable income to the plan is not synonymous with the commitment of *actual* disposable income; 3) as contrasted with a percentage plan, early payment of a fixed sum under a "pot" or "base" plan does not result in a windfall to the debtor; and 4) an early payoff protects creditors from the risk of future default.

The third amended plan was confirmed, unmodified, at the May 12 confirmation hearing and an order regarding the same

was entered on May 21. Debtor apparently did not raise the issue of modification of the plan at the confirmation hearing.

The court subsequently heard argument on the Motion. The trustee objected that, under § 1327(a), Debtor was bound by the terms of his confirmed plan and that allowing the modification would violate the model plan's prohibition against payment of a plan in fewer than 36 months unless all allowed claims are paid in full. Further, the trustee argued, Debtor should have raised the issue prior to confirmation of the plan. Finally, the provision in the plan requiring annual review of Debtor's income was included to permit the trustee to seek a modification of the plan in the event Debtor's income increases over the life of the plan and, therefore, Debtor should not be allowed to terminate the plan early.

The court denied Debtor's Motion, finding that if Debtor wanted to challenge the model plan, he should have done so prior to confirming a plan under it.[4] Further, the court concluded that the local rule mandating use of the model plan does not abridge any substantive debtor rights because, pursuant to § 1325(b), a debtor is not entitled to terminate a plan in fewer

**3.** At the hearing, the court affirmatively deemed the Motion to be one to modify the confirmed plan pursuant to § 1329 and treated the trustee's objection to be an opposition to proposed modification. The dissent expresses due process concerns and queries whether Debtor properly served its motion on all creditors in the case as required under Rule 3015(g). We note, however, that Debtor's counsel represented to the court that all creditors had received notice of the Motion:

> Well, we noticed it out to all creditors as though it was a modification, Your Honor, so I thought we had—we had addressed the issue that would be presented in the modification, which is to tell the creditors what we propose to do.

Transcript of Proceedings, May 28, 2004, 5:3–7. Notably, neither the trustee nor the court challenged this representation. The certificate of service, to which the dissent refers, does indeed indicate service only to the Trustee. However, that particular certificate does not conclusively establish that notice was not sent to all creditors.

**4.** We respectfully disagree with the implication of our distinguished colleague in dissent that because Debtor did not challenge the provisions of the model plan at the time of confirmation, he was precluded from later seeking the modification of such provisions, and that, therefore, the issue is not properly before us. Nothing in § 1329 prohibits a debtor from seeking the modification of *any* plan term affecting the amount of payments on claims, the time for making such payments, or the amount of distributions to creditors. That the term to be modified involves a form provision in a court-mandated model plan should be of no consequence.

than 36 months from the date of the first plan payment where an objection has been made. The court also noted that Debtor always had the option of voluntarily dismissing the case in order to complete the refinance.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2). This panel has jurisdiction under 28 U.S.C. § 158(b)(1).

## ISSUES

1. Whether the Bankruptcy Code allows a chapter 13 debtor to modify his plan under § 1329 to pay the plan off in fewer than 36 months where unsecured claims will not be paid in full.

2. If such a modification is permitted under the Code, whether a court-mandated form plan which contains a contrary provision impermissibly abridges substantive debtor rights.

## STANDARD OF REVIEW

The panel reviews de novo a bankruptcy court's interpretation of the Bankruptcy Code and Rules. *Predovich v. Staffer (In re Staffer)*, 262 B.R. 80, 82 (9th Cir. BAP 2001). The validity of a local rule is also reviewed de novo. *Jones v. Hill (In re Hill)*, 811 F.2d 484, 485 (9th Cir.1987). The bankruptcy court's rulings with respect to plan modification are reviewed for abuse of discretion. *Powers v. Savage (In re Powers)*, 202 B.R. 618, 621 (9th Cir. BAP 1996).

## DISCUSSION

I. *Does the Bankruptcy Code permit payment of a chapter 13 plan in fewer than 36 months where debtor is not paying 100% of all allowed unsecured claims?*

At issue here are §§ 1322(d), 1325(a), 1325(b) and 1329, and whether, collectively,

they ought to be interpreted as requiring a debtor to make projected disposable income payments for a minimum term of 36 months, or, whether a debtor is entitled to modify the plan to complete such payments in fewer than 36 months without having to pay 100% of allowed unsecured claims.

Section 1322(d) provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Section 1325(a) provides in part:

Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

Section 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Section 1329, which governs the modification of a confirmed plan prior to completion of plan payments, provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder on an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title

apply to any modification under subsection (a) of this section.

\* \* \* \* \* \*

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

The trustee argues that the foregoing provisions ought to be read to require the payment of monthly projected disposable income for a *minimum* of 36 months while Debtor contends that these sections include no such provision mandating the minimum length of a plan. According to Debtor, 36 months is not a measure of the lapse of *time* that must occur but, rather, a measure of the *value* that creditors must receive under the plan, i.e., 36 months worth of a debtor's projected monthly disposable income.[5]

Adopting the trustee's interpretation that a debtor must make payments for a minimum of 36 months or pay àll creditors in full requires reading § 1325(b)(1)(B) into § 1329 such that:

If the trustee or the holder of an allowed unsecured claim objects to the **modification** of the plan, then the court may

---

**5.** As a practical matter, chapter 13 debtors often do pay off their plans in fewer than 36 months, but frequently do so without first seeking plan modification. By the time the trustee objects to the early payout, it is too late because courts generally hold that once all payments required under the plan have been made, the debtor is entitled to his discharge. *See e.g., Profit v. Savage (In re Profit),* 283 B.R. 567, 573 (9th Cir. BAP 2002)(trustee may not request a modification under § 1329 after payments under a confirmed plan have been completed); *In re Sounakhene,* 249 B.R.

801, 804 (Bankr.S.D.Cal.2000)(court denied trustee's motion to modify debtors' plan as time-barred because plan was "complete" when debtors refinanced their home and made a lump sum prepayment to the trustee, prior to expiration of the plan's 37 months).

In this case, one of the conditions of Debtor's refinancing agreement was that the loan bring about the termination of his chapter 13 case, so Debtor was forced to seek the modification first rather than simply pre-paying the plan.

not approve the **modified** plan unless, as of the effective date of the plan—

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis and language added).

Courts are split as to the application of § 1325(b)(1)(B), i.e., the "disposable income test," to a plan modification that provides for an early payout. As one court put it, "[b]ankruptcy courts have arrived at vastly different results when faced with a debtor's motion to make a one-time lump sum payment." *Massachusetts Housing Finance Agency v. Evora*, 255 B.R. 336, 342 (D.Mass.2000).

## A. SURVEY OF CASES

### 1. *Cases decided within the Ninth Circuit.*

*In re McKinney*, 191 B.R. 866 (Bankr. D.Or.1996): Modifications of post-confirmation plans, if objected to, must comply with the disposable income requirements of § 1325(b). The debtor's confirmed plan provided for 0% percent to unsecured creditors and payment of scheduled priority debt in the amount of $10,000 to be paid over 36 months. *Id.* at 867. The actual priority claims filed and allowed totaled substantially less than $10,000, however, and the debtor was able to pay the allowed priority claims in only 12 months. *Id.* The trustee moved to modify the plan to increase the percentage to unsecured creditors and to require the debtor to continue paying all projected disposable income for at least three years as required under § 1325(b)(1). *Id.* The court granted the trustee's motion, holding that modifications of post-confirmation plans, if objected to,

must comply with the disposable income requirements of § 1325(b). *Id.* at 869. Importantly, the court reasoned that while § 1325(b) is not directly incorporated into § 1329(b), it is *indirectly* incorporated therein via its reference in § 1325(a). *Id.*

*Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430 (9th Cir. BAP 1997): Section 1325(b) might apply where an objection is made by the trustee or a creditor to the confirmation or modification of a plan. The plan in this case was confirmed, without objection, with provisions providing for monthly payments of $300 for 38 months and an 11% payout to unsecured creditors. *Id.* at 432. When the amount of the filed claims came in lower than anticipated, and it was determined that the plan would pay the 11% to unsecured creditors in 32 months instead of 38, a creditor moved to increase the term of the plan to not less than 36 months pursuant to § 1325(b). *Id.* at 433. The bankruptcy court found § 1325(b) was inapplicable and denied the creditor's motion. *Id.* at 436.

Because no objection to either the plan or the modified plan had been made by the trustee or a creditor, on appeal this panel did not have to address the interplay between §§ 1329(b) and 1325(b). Nevertheless, we did note in passing that § 1329(b) does not expressly incorporate § 1325(b). *Id.* at 434. In affirming the bankruptcy court's ruling, we observed "[t]he Code does not prohibit a plan that is less than 36 months in duration in the absence of an objection by the trustee or a creditor 'to the confirmation of a plan.'" *Id.* at 437 *citing* § 1325(b)(1). By holding that § 1325(b) did not apply because no one objected to the plan or the *modified plan,* we left unresolved the applicability of § 1325(b) where an objection to the modified plan has been made.

*McDonald v. Burgie (In re Burgie)*, 239 B.R. 406 (9th Cir. BAP 1999): Although § 1329 makes no reference to § 1325(b), the disposable income test might, nevertheless, apply in the context of a plan modification under § 1329. In this case, we noted the exclusion of § 1325(b) from § 1329, but because the basis of the trustee's objection was unclear, we assumed—without deciding—that the disposable income test *did* apply to the modification motion. *Id.* at 409. Further, we indicated that we adopted the assumption because the parties and the bankruptcy court had made the assumption and the issue was not presented on appeal. *Id.*

*In re Sounakhene*, 249 B.R. 801 (Bankr. S.D.Cal.2000): Section 1325(b) is not incorporated into § 1329 based upon a plain meaning interpretation of the statute. Prior to the expiration of their 37–month plan, the debtors refinanced their home and made a single lump sum payment to the trustee equal to the aggregate amount of their disposable income over the life of the plan. *Id.* at 803. The trustee moved to modify the plan to require that payments be made for 36 months. *Id.* The bankruptcy court denied the motion as time-barred on the ground that the plan was complete when the trustee received the amount required under the plan. *Id.* at 804.

In analyzing the plain language of the statute, the court declined to read § 1325(b) into § 1329. *Id.* at 805. Rather than applying the disposable income test, the court determined that the better approach would be to utilize the analysis underlying the disposable income test in exercising the court's judgment and discretion. *Id.* citing *In re Than*, 215 B.R. at 436; *see also, In re Powers*, 202 B.R. at 622 ("the only limits on modification are those set forth in the language of the Code itself, coupled with the bankruptcy judge's

discretion and good judgment in reviewing the motion to modify").

Furthermore, the court held, even if § 1325(b)(1)(B) did apply, nothing therein prohibits a lump sum payment where no prepayment discount is sought. 249 B.R. at 805, *citing In re Martin*, 232 B.R. 29, 37 (Bankr.D.Mass.1999). The court described its approach as allowing the court discretion to consider important components of the disposable income test, while upholding the statute's plain language. 249 B.R. at 805.

 2. *Other cases analyzing the interplay between §§ 1329 and 1325(b).*

 a. *The disposable income test of § 1325(b) does not apply to plan modification under § 1329.*

*Casper v. McCullough (In re Casper)*, 154 B.R. 243 (N.D.Ill.1993): When a debtor completes payments under the plan which satisfy his or her percentage obligation to each class of creditors, the bankruptcy court must discharge the debts. As a result of priority claims being allowed in amounts significantly less than scheduled, the debtors were able to complete their 60–month plan in 24 months, paying ten percent to unsecured creditors as the plan required. *Id.* at 245–46. The court granted the trustee's motion to modify the plan to increase the dividend to unsecured creditors to eighty percent and maintain the 60–month term. *Id.* On appeal, the district court reversed, holding in part that § 1325(b)(1)(B) only requires debtors to commit the *amount* representing their projected disposable income over three years to the plan and does not prohibit the payment of such amount in less than the proscribed term of the plan. *Id.*

*In re Phelps*, 149 B.R. 534 (Bankr. N.D.Ill.1993): "The substance of a plan looks to the nature of the debtor's obli-

gation to the debtor's creditors, not to the number of payments proposed." *Id.* at 537. The confirmed plan provided for payment of secured claims in full and a distribution of 10% on account of unsecured claims in monthly plan payments of $282 over 43 months. *Id.* at 535. Because the amount of filed unsecured claims was well below the scheduled debt, it took only 37 months to complete the plan. *Id.* The trustee sought to modify the plan to require the debtor to continue making payments for the full 43 months. *Id.* at 536. The court held that the debtor need not specify both the length of payments and the percentage to be paid to unsecured creditors; specification of one or the other was sufficient. *Id.* at 537.

Plan completion, the court reasoned, occurs when the debtor has paid the percentage owed to each class of creditors as provided for in the plan. *Id. citing In re Chancellor,* 78 B.R. 529, 530 (Bankr. N.D.Ill.1987). Therefore, the duration of a plan can be changed, either formally by modification or informally by completing payments sufficient to pay the required percentage early because of a reduction in the allowed unsecured claims as compared to scheduled debt. *Id.* at 537–38. By contrast, the percentage to be paid unsecured claims, once fixed by the order confirming the plan, can only be changed by plan amendment. *Id.* at 538.

While *Phelps* did not address the particular issue of § 1325(b)'s disposable income test and the mandatory minimum of 36 months, its reasoning is instructive in that it interprets "completion of payments" as it is used in § 1329(a), i.e., focusing on payment of the required percentage owed rather than on the duration of the plan.

*In re Easley,* 205 B.R. 334 (Bankr. M.D.Fla.1996): Nothing in § 1329 prohibits a debtor from paying off his plan early. Several months after confirmation of his 60–month plan, the debtor moved to pay the entire amount due under the plan from a loan received from his parents. *Id.* at 334–35. The trustee argued that any loan proceeds should be used to increase payments under the plan. *Id.* at 335.

The court sided with the debtor, determining (without specifically discussing § 1325(b)(1)(B)) that nothing in § 1329 prohibited the debtor from borrowing money to pay his existing creditors early. The court further reasoned that "he merely is substituting one set of creditors, his parents, for his former set of creditors addressed in the Plan. To the extent the loan proceeds from his parents became property of the estate, so would the corresponding liability." *Id.* at 335. The court also noted that creditors would receive a substantial benefit under the modified plan because they would receive their funds sooner, without risking future defaults by the debtor. *Id.* at 336.

*Forbes v. Forbes (In re Forbes),* 215 B.R. 183 (8th Cir.BAP1997): Congress clearly omitted § 1325(b) when drafting the requirements for post-confirmation plan modification. Three years into his chapter 13 plan, the debtor received settlement proceeds which would enable him to reduce the plan term from 60 to 40 months. *Id.* at 185–86. The trustee and a creditor objected to the proposed modification on the ground that the settlement constituted a windfall, enabling debtor to pay all of his creditors in full. *Id.* at 186. The court overruled the objections and approved the modified plan. The issue on appeal was whether the court erred by failing to consider the settlement funds as disposable income under the § 1325(b) in deciding to modify the plan.

The panel held that though case law is unsettled on the issue, Congress did not include § 1325(b) in the requirements for post-confirmation plans and the court

would not read it otherwise. *Id.* at 191. The panel noted that its conclusion is supported by the absurd result which would have obtained had the disposable income test been applied under the following facts:

Application of the disposable income test at confirmation of a modified plan is at least confusing and may render many postconfirmation modifications impossible altogether.... Counting the three-year period in the disposable income test from the date the first payment is due under the *modified* plan would preclude approval of modification of a plan that is already more than two years old. Section 1329(c) clearly states that the court may not approve a modified plan that calls for payments after five years after the first payment was due under the original confirmed plan.... Mathematically, no proposed modified plan can satisfy both the disposable income test in § 1325(b) and the five-year limitation in § 1329(c) if the proposed modification is filed after two years after the commencement of payments under the original plan.

*Id.* at 192 *quoting* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, vol. 2, § 6.45 at 6–136 to 137. Thus, the panel concluded, there is only one plan from which the disposable income test's three years run; it is not a factor to be considered by a court approving post-confirmation modifications. *Id.* at 192.

*In re Smith,* 237 B.R. 621 (Bankr. E.D.Tex.1999) *aff'd* 252 B.R. 107 (E.D.Tex. 2000): Where a monetary gift from the debtor's family allowed her to prepay her remaining plan installments with one lump sum payment, she was entitled to an immediate discharge because "completion of all payments" statutorily entitled her to discharge.

The debtor's 56–month plan was confirmed over the objection of a creditor.

237 B.R. at 623. After making her 26th payment, the debtor paid the trustee the total amount due under the remainder of the plan. *Id.* The trustee, in turn, distributed it to creditors and filed a "Notice of Plan Completion and Order Setting Discharge." *Id.* The objecting creditor complained that the debtor was not entitled to a discharge because she had failed to submit all of her disposable income for a minimum of 36 months as required under § 1325(b)(1). *Id.*

The court overruled the objection and held that the creditor's reliance on § 1325(b)(1) was misplaced because that section applies only to plan confirmations and arguably, because of a split in authority, to requests for modification. *Id.* at 625 n. 5 *citing In re Forbes,* 215 B.R. at 190–92. Since there was no request for modification involved in this case, the court declined to express an opinion on the § 1325(b)(1) issue. *Id.* at 625 n. 5.

The court questioned the practice of some courts in treating a debtor's motion to make an early payout as an implied motion to modify a confirmed plan, rather than characterizing the proposed payment as simply a single prepayment of all amounts due and owing under a confirmed plan. *Id.* at 625 n. 8; *accord Matter of Casper,* 154 B.R. 243, 246 (N.D.Ill.1993). "Thus, without providing advance notice to any party, a Chapter 13 debtor may tender all the payments due and owing under a confirmed plan on an accelerated basis and thereby create an entitlement to a discharge." *Id.* at 626, *citing In re Bergolla,* 232 B.R. 515 (Bankr.S.D.Fla.1999)(overruling trustee's objection to discharge and demand for modification of plan when, after making four payments toward a sixty-month plan, debtors satisfied without notice all payments required to be made in the chapter 13 plan); *In re Martin,* 232 B.R. at 37 ("I find nothing in the statute

which prohibits prepayment where no prepayment discount is sought.").

The court further held that a debtor becomes statutorily entitled to discharge, under § 1328(a), the moment all of the payments prescribed in the confirmed plan are made, "whether received by the trustee singularly over a series of months, or received in an aggregate amount in one prepayment." 237 B.R. at 626.

*Massachusetts Housing Finance Agency v. Evora*, 255 B.R. 336 (D.Mass.2000): A motion that seeks to alter the substance of the plan by changing the *amount* paid to unsecured creditors is treated as a modification, while a motion to alter the *number* of payments made would not necessarily be so treated. Thirteen months after plan confirmation, the debtors moved for approval of a refinance loan, proposing to pay the trustee a one-time lump sum payment in full satisfaction of their obligations under the plan. *Id.* at 339. The debtors' sole creditor objected that granting the motion would allow them to "manipulate the Code to modify a mortgage, receive a 'super discharge' and then pocket thousands of dollars on a refinance of a debt simply because the property values have increased." *Id.* The bankruptcy court overruled the objection and the creditor appealed.

On appeal, the district court held (without specifically discussing § 1325(b)(1)(B)) that because § 1329 is permissive and the motion did not purport to alter the confirmed plan, the motion was not necessarily an implicit modification of the plan. *Id.* at 343. The court commented further that though the decisions involving one-time lump sum payments are conflicting, they can be reconciled by focusing not on the *number* of payments to be made (i.e., duration of the plan) but on the *amount* to be paid to unsecured creditors. *Id.* at 342. Since both the debtors and the creditor

were bound by the amount of allowed secured claims set forth in the plan, and since the motion did not violate the Code or purport to alter the confirmed plan to the detriment of the creditor, the court affirmed the bankruptcy court's ruling allowing the one-time lump sum early payment. *Id.* at 342–43.

*Pancurak v. Winnecour (In re Pancurak)*, 316 B.R. 173 (Bankr.W.D.Penn.2004): Where the trustee does not object to plan confirmation, and the debtor paid the amounts and percentages due under the plan, § 1325(b)(1)(B) does not preclude early plan completion and discharge. The debtor made 31 plan payments and then made one lump-sum payment, intending to pay off the plan. The debtor thereafter filed a motion to compel the trustee to issue a discharge pursuant to § 1328(a). *Id.* at 174. The trustee objected on the ground that under § 1325(b)(1)(B), the debtor must remain in bankruptcy for a minimum of 36 months or pay a 100% dividend to unsecured creditors. *Id.* at 175. Citing *Than*, the court held that because the trustee did not object to the confirmation of the plan, and because the debtor satisfied the plan both as to the amount and as to the estimated percentage distribution to unsecured creditors, the debtor was not precluded by § 1325(b)(1)(B) from completing his plan early and receiving a discharge. *Id.* at 176.

*In re Golek*, 308 B.R. 332 (Bankr. N.D.Ill.2004): Section 1325(b) is not incorporated by reference into § 1325(a). Approximately 20 months into the debtor's plan, the court heard and granted his motion to sell real estate and directed him to deposit proceeds from the sale with the trustee in an amount sufficient to pay off the plan. *Id.* at 334. The debtor then moved for the entry of order of discharge to which the trustee objected, on the

ground that debtor was proposing to terminate his plan before its 36 month term had expired. *Id.*

The court treated the debtor's motion as a post-confirmation motion to modify his plan under § 1329 and declined to read § 1325(b)'s disposable income test into § 1329, rejecting the trustee's argument that § 1325(b) is incorporated by reference into § 1325(a). *Id.* at 337. The court commented,

> When Congress wants to say something, it knows how to say it, and in this instance, Congress did not say it. Indeed, section 1329(b)(1) goes out of its way to include *both* sections 1322(a) and 1322(b) in its list of restrictions. While section 1325(a) is expressly listed, however, section 1325(b) is not. It is unclear why Congress would expressly include both subsections of section 1322, but simply state section 1325(a), if it in fact meant to include both sections 1325(a) and 1325(b). If this was a mere omission by Congress, then it is for Congress, not this court, to fix this omission.

*Id.* Citing *In re Sounakhene,* among other cases, the court adopted the plain meaning approach and refused to apply the disposable income test to post-confirmation plan modifications. *Id.*

b. *Cases favoring application of § 1325(b) to plan modification under § 1329.*

*In re McCray,* 172 B.R. 154 (Bankr. S.D.Ga.1994): In a slightly different twist, the court here determined that § 1325(b) applies to § 1329 modifications, but only in extraordinary circumstances. "Unless there are substantial, unanticipated changes in the debtor's ability to pay under a plan already confirmed, the rights of the debtor and his creditors are settled at the date of confirmation, and ought not to be disturbed in modification proceedings relating to disposable income." 172 B.R. at 158 *quoting In re Woodhouse,* 119 B.R. 819, 820 (Bankr.M.D.Ala.1990). Stated otherwise, the court concluded that "[i]ssues of disposable income are therefore precluded [on res judicata grounds] from being raised unless the court should find the circumstances 'extraordinary.'" *Id.*

*In re Guentert,* 206 B.R. 958 (Bankr. W.D.Mo.1997): Section 1325(b) applies to post-confirmation modifications. Sixteen months after confirmation of her 45% plan, the debtor sought authority to pay the remaining balance on her plan from life insurance proceeds and to obtain an early discharge. *Id.* at 960. The trustee urged the court to require payment of 100% to unsecured creditors. *Id.* Holding that § 1325(b) applies to post-confirmation modifications, the court concluded that it lacked authority under the Code to reduce the plan term to 23 months without payment of all claims in full. *Id.* at 961.

*In re Martin,* 232 B.R. 29 (Bankr. D.Mass.1999): Section 1325(b) applies but does not necessarily preclude the debtor from paying off his plan in less than 36 months where no prepayment discount is sought. In this case, the confirmed plan provided for 36 payments of $272 with a 10% dividend to unsecured creditors and, further, that the "final percentage may be increased up to 100% in accordance with rule 3002(c)." *Id.* at 31–32. Less than 24 months later, the court granted the debtors' motion use the proceeds of a refinance loan to pay off the remaining 10% dividend to creditors. The trustee objected that absent 100% payment of the claims, the debtors would be required under § 1325(b) to continue making payments for the full 36 months. Declining to follow *Forbes,* the court adopted the following analysis from the Lundin Treatise:

> Though there is no illuminating legislative history, the language of §§ 1329 and

1325 favors the interpretation that the disposable income test applies at confirmation of a modified plan.

Policy arguments favor application of the disposable income test at confirmation of a modified plan.... Applying the projected disposable income test at confirmation of a modified plan would go a long way to eliminating the "danger" that a Chapter 13 debtor would experience a significant improvement in financial condition after confirmation of the original plan and not share that good fortune with prepetition creditors.

The logic of the projected disposable income test does not support its application at modification of a confirmed plan ... If the projected disposable income test is applied again and again, each time the trustee or the holder of an allowed unsecured claim moves for modification of a plan after confirmation, then the concept of "projected" is meaningless ...

This conundrum only serves to emphasize that the interaction of the disposable income test in § 1325(b) and the modification of plans under § 1329 was not well conceived. The 1984 amendments enabling the Chapter 13 trustee and allowed unsecured claim holders to seek postconfirmation modification have exacerbated these problems of statutory construction. It is unlikely that the drafters of § 1329(b) intended to preclude modification of all plans that have survived two years after the first payment was due under the original plan and in which unsecured claim holders cannot be paid in full in less than three years.

*Id.* at 36–37 *quoting* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, § 6.46 (2nd ed.1994).

The court found the arguments excluding the application of the disposable income test were not as strong as those to include it. *Id.* at 37. However, in applying § 1325(b), the court did not interpret the language to mean that a debtor could not prepay a plan in fewer than 36 months. More specifically, the court found nothing in the statute prohibiting prepayment where no prepayment discount is sought. *Id.* "A lump sum payment in the aggregate amount of the Debtors' disposable income during the three years of the Plan is simply an anticipatory satisfaction of the obligations under the Plan and is permissible." *Id.*

Ultimately, the court denied debtors' motion to modify their plan because, by not filing updated schedules I and J, they could not demonstrate under § 1325(b) that they were paying creditors the equivalent of their disposable income during the life of the plan. *Id.* at 38.

Even though *Martin's* holding (§ 1325(b) applies to § 1329) is contrary to that in *Sounakhene,* the outcomes are the same. In both cases, the courts determined that debtors were entitled to prepayment of their plans upon refinancing of their homes and considered the debtors' disposable income in determining whether to allow the plan modification. The operative difference is that in *Martin,* the court applied the § 1325(b) disposable income test as a dispositive requirement, while in *Sounakhene,* the court considered the disposable income as a component of the debtors' overall financial condition in exercising its discretion under § 1329.

*In re Fields,* 269 B.R. 177 (Bankr. S.D.Ohio 2001): Without deciding the issue, the court commented that "it appears that courts within the Sixth Circuit are to apply § 1325(b) within the context of a *debtor's* motion to modify." *Id.* at 180. However, the court continued, it is unclear whether § 1325(b) would apply if it is the trustee or a creditor seeking the modifica-

tion. *Id. citing Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481–82 (6th Cir.1996)(applying § 1325(b) to debtor's motion for modification).

Relying on *Than* and *Sounakhene*, the court determined that it was not necessary to decide whether the disposable income test applies "because the express language of § 1329(a) permits such a modification without the need to incorporate § 1325(b)." 269 B.R. at 180 *citing In re Than*, 215 B.R. at 436–438 (court to consider debtor's increased income among other factors); *In re Sounakhene*, 249 B.R. at 805 (court has discretion to consider important components of disposable income test).

## B. ANALYSIS

■ Section 1329(b) expressly applies certain specific Code sections to plan modifications but does *not* apply § 1325(b). Period. The incorporation of § 1325(a) is not, as has been posed by some courts, the functional equivalent of an indirect incorporation of § 1325(b). Under § 1329(b), only the "requirements of Section 1325(a)" apply to modifications under § 1329(a). § 1329(b). As previously noted, § 1325(a) requires that *"except as provided in [1325]b*, the court shall confirm a plan if . . . ." Thus, the 1325(a) confirmation requirements incorporated into § 1329(b) *exclude* the provisions of § 1325(b).

Simply put, the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of 1325(b)(1)(B) with respect to modified plans. Had Congress intended to impose such a requirement, it could have easily done so by making the appropriate incorporating reference. If the absence of the reference to § 1325(b) was indeed an oversight, it is the province of the legislature, and not the judiciary, to make the correction. *See Lamie v. United States Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024

(2004) (In determining that debtors' chapter 7 attorneys cannot be paid from the estate due to the exclusion of such professionals from § 330, the Supreme Court explained that "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.' " *quoting United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion)).

In our view, the approach adopted by the court in *Sounakhene* is the most sound in that it permits a married analysis that is consistent with both the plain language and the spirit of §§ 1329 and 1325. Under this approach, important components of the disposable income test are employed as part of a more general analysis of the total circumstances militating in favor of or against the approval of modification, without requiring tortured and illogical statutory interpretations (where the outcome differs depending upon which party is seeking the modification, whether a certain party has objected, or whether "extraordinary circumstances" exist, etc.). *In re Sounakhene*, 249 B.R. at 805 *citing Than*, 215 B.R. at 436; *Powers*, 202 B.R. at 623 (recognizing the debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion).

■ In determining whether to authorize a modification that reduces a plan term to less than 36 months without full payment of allowed claims, the bankruptcy court should carefully consider whether the modification has been proposed in good faith. *See* § 1325(a)(3). Such a determination necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's

current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors.

The trustee's attempt to distinguish this case from *Sounakhene* based upon the identity of the party seeking plan modification is unpersuasive. The distinction is not at all relevant to the statutory requirements of § 1329. Under § 1329, a debtor, trustee or creditor all have an absolute right to seek modification of a confirmed plan.

We agree with the court's holding in *Sounakhene* and conclude that the disposable income test of § 1325(b) is not implicated under a strict reading of § 1329 (except, as we have earlier noted, as a factor in determining the good faith of the plan modification). Therefore, the bankruptcy court may approve a debtor's modification to his plan so as to complete it in fewer than 36 months without having to pay unsecured claims in full. Because we find nothing in the Code prohibiting Debtor here from so modifying his chapter 13 plan, we must next address the issue of whether the Northern District's mandatory model plan impermissibly abridges substantive debtors' rights.

II. *Does LBR 1007–1 impermissibly abridge debtor's rights by mandating use of a Model plan which includes Chapter 13 payment requirements not found in the Code?*

 District and bankruptcy courts have been delegated authority to adopt local rules prescribing the conduct of business but the rules must be consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *Bersher Invs. v. Imperial Sav. Ass'n. (In re Bersher Invs.)*, 95 B.R. 126, 129 (9th Cir. BAP 1988)("Bankruptcy Rule 9029 allows for the making of local bankruptcy rules so long as they are not 'inconsistent' with the more general Bankruptcy Rules.").[6] A local rule may dictate "practice or procedure but may not enlarge, abridge or modify any substantive right." *Rivermeadows Assocs., Ltd. v. Falcey (In re Rivermeadows Assocs., Ltd.)*, 205 B.R. 264, 269 (10th Cir. BAP 1997).

In *Steinacher v. Rojas (In re Steinacher)*, 283 B.R. 768 (9th Cir. BAP 2002), we addressed the validity of a local rule requiring chapter 13 debtors with prior bankruptcy cases to cure certain pre-petition mortgage defaults as a condition of confirmation (the "Six Month Rule"). *Id.* at 770. The debtors there failed to comply with the local rule and the trustee orally requested a dismissal. *Id.* The debtors

---

6. Rule 9029(a) Local Bankruptcy Rules
 (1) Each district court acting by a majority of its district judges may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Rule 83 F.R.Civ.P. governs the procedure for making local rules. A district court may

authorize the bankruptcy judges of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make and amend rules of practice and procedure which are consistent with—but not duplicative of—Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Local rules shall conform to any uniform numbering system prescribed by the Judicial Conference of the United States.

opposed the dismissal, arguing that the Six Month Rule interfered with their substantive right under the Code to cure any default in their plan. *Id.* at 771. The court observed that the debtors had violated the rule and dismissed the case. *Id.*

On appeal, we applied a three-part test, previously articulated in *Garner v. Shier (In re Garner)*, 246 B.R. 617, 624 (9th Cir. BAP 2000), for determining the validity of a local rule: (1) whether it is consistent with Acts of Congress and the Federal Rules of Bankruptcy Procedure; (2) whether it is more than merely duplicative of such statutes and rules; and (3) whether it prohibits or limits the use of Official Forms. 283 B.R. at 772–73.

We concluded that the Six Month Rule, which limited the ability of certain chapter 13 debtors to cure pre-petition defaults through their plans, conflicted with § 1322 which allows a debtor to include in his or her plan a provision proposing to waive "any" defaults within a reasonable time. *Id.* at 773. We observed that while the local rule reflected an understandable attempt to redress abuses caused by repetitive filings, such abuses could not be prevented by imposing a general pre-petition cure requirement which exceeds that contemplated by the Code. *Id.* at 774. Because the Six Month Rule was inconsistent with the Code, we held it invalid under Rule 9029(a). *Id.*

■ In this case, the trustee argues that *Steinacher* is inapplicable because § 1325(b)(1)(B) is consistent with the language in the model plan. Not surprisingly, Debtor contends otherwise, that is, that LBR 1007–1 is inconsistent with § 1329 because it mandates use of the model plan which contains a provision abridging Debtor's rights under § 1329.

We agree with Debtor. As discussed at length above, the Code allows a debtor to modify a chapter 13 plan so as to conclude it in fewer than 36 months, without payment of all claims in full. A local rule prohibiting Debtor from doing what he is entitled to do under the Code is inconsistent with an Act of Congress and is, therefore, invalid under Rule 9029(a).

■ At the hearing on the Motion, the bankruptcy court ruled that Debtor had waived the right to object to the requirements of the model plan after having already confirmed a plan containing the complained of provision. This reasoning is not persuasive. As Judge Jaroslovsky recently commented in a case before this panel involving the import of local rules in the plan confirmation process, a court-mandated form cannot cross over the line from "facilitating Chapter 13 administration to dictating Chapter 13 terms." *Cohen v. Tran (In re Tran)*, 309 B.R. 330, 339 (9th Cir. BAP 2004) (concurring opinion).[7] In his concurrence, Judge Jaroslovsky rejected the trustee's argument that the debtor there could have sought a variance from the terms of the mandatory plan stating that

> given the practical realities of plan confirmation [the debtor] had little choice except to adopt the dictated language of the mandatory plan even though under the Bankruptcy Code he had a right to [do so].

*Id.*

Similarly, in this case, it does not seem reasonable to expect Debtor to challenge

---

7. Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, participated in the decision by designation. The model plan at issue in *Tran* was mandated by the local rules of the Bankruptcy Court of the Central District of California. The provisions of that model plan analyzed by Judge Jaroslovsky involve issues unrelated to those addressed in this case.

the legality of a provision in the court-mandated form at the time of plan confirmation, given the practical realities of the process. Accordingly, we find that Debtor did not waive the right to seek to modify provisions of his plan which were inconsistent with the model plan, but otherwise allowable under the Code.

## CONCLUSION

Based on the foregoing, we REVERSE and REMAND with instructions to the bankruptcy court to enter an order either granting or denying Debtor's motion to modify on grounds that are consistent with this ruling.

BRANDT, Bankruptcy Judge, dissenting.

I respectfully dissent: as observed by the bankruptcy judge, debtor never challenged the model plan. Transcript, 28 May 2004, at 9:4. All four of debtor's plans presumably contained the language now objected to (only the third amended plan is in the record before us). Neither party to this appeal has briefed the implications of that failure, and we should not answer questions not squarely presented in a procedurally correct fashion, particularly when, as here, neither party has addressed the issue in the bankruptcy court or on appeal.

Debtor does not just propose to pay off the plan, which requires payment in full of all claims if within the first 36 months, but to do two things: first, amend the plan to delete that requirement, and then to pay a lesser amount (assuming the total claims exceed the "pot"—the record before us does not disclose the total). And proposes to do so without notice to creditors, which Rule 3015(g), Fed. R. Bankr.P., requires for post-confirmation modifications:

> A request to modify a plan ... shall be filed together with the proposed modification. The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors not less than 20 days notice by mail of the time fixed for filing objections and, if an objection is filed, the hearing to consider the proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the proposed modification....

Most local bankruptcy rules put the burden of giving notice on the proponent of the modification; that is likely the case in the Northern District of California, but we have no briefing on that point, either.

The certificate of service, of which we may take judicial notice, indicates service only on the trustee. Counsel's representation that the notice had been served on all creditors, quoted in footnote 3 above, is not convincing: she does not say that she sent the notice to them, there's no indication she even checked her file, and she contradicts the sworn statement of her paralegal in the proof of service filed 11 May 2004. The lack of notice to creditors precludes treatment of the motion as a modification to the confirmed plan, and raises questions of due process. *See In re Bagby*, 218 B.R. 878, 884–886 (Bankr.W.D.Tenn.1998) (modification of a confirmed plan requires notice to all creditors informing them of the effects of the proposed modification on their claims and of the procedure for objection to the modification). *See also* 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3d ed. ¶ 253.1 (2000 & Supp.2004).

I would affirm.